In re ARBOGAST AND BASTIAN, INC., Debtor.

Paul E. GIBSON, t/a G and S Livestock Co., Plaintiff,

v.

ARBOGAST AND BASTIAN, INC., Defendant.

Bankruptcy No. 84–01538 T.
Adv. No. 84–0744.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 3, 1984.

William M. Shields, Philadelphia, Pa., for plaintiff.

J. Jackson Eaton, III, Allentown, Pa., for debtor.

Kurt Althouse, Reading, Pa., for Creditors' Committee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this adversary proceeding, the plaintiff seeks a determination that he is a beneficiary of the statutory trust which has been established by the Chapter 11 debtor-defendant pursuant to section 206 of the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. § 181 et seq. ("the Act"). The plaintiff is a livestock seller and the debtor is a packer which has not paid for certain of the livestock which it purchased from the plaintiff. It is undisputed that if the sales of the livestock in question were "cash sales" within the meaning of section 206 of the Act, 7 U.S.C. § 196, the plaintiff is a beneficiary of the statutory trust. Therefore, the only issue *sub judice* is whether or not the sales were "cash sales" under 7 U.S.C. § 196.[1]

7 U.S.C. § 196 states, in part:

Livestock, inventories, receivables and proceeds held by packer in trust for benefit of unpaid cash sellers; time limitations; exempt packers; effect of dishonored instruments; preservation of trust benefits by seller

(b) All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers: Provided, That any packer whose average annual purchases do not exceed $500,000 will be exempt from the provisions of this section. Payment shall not be considered to have been made if the seller receives a payment instrument which is dishonored: Provided, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 228b of this title, or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary.

Definition of cash sale

(c) For the purpose of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer.

7 U.S.C. § 228b states, in part:

§ 228b. Prompt payment for purchase of livestock

Full amount of purchase price required; methods of payment

(a) Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price: Provided, That each packer, market agency, or dealer purchasing livestock for slaughter shall, before the close of the next business day following purchase of livestock and transfer of possession thereof, actually deliver at the point of transfer of possession to the seller or his duly authorized representative a check or shall wire transfer funds to the seller's account for the full amount of the purchase price; or, in the case of a purchase on a carcass or "grade and yield" basis, the purchaser shall make payment by check at the point of transfer of possession or shall wire transfer funds to the seller's account for the full amount of the purchase price not later than the close of the first business day following

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

determination of the purchase price: Provided further, That if the seller or his duly authorized representative is not present to receive payment at the point of transfer of possession, as herein provided, the packer, market agency or dealer shall wire transfer funds or place a check in the United States mail for the full amount of the purchase price, properly addressed to the seller, within the time limits specified in this subsection, such action being deemed compliance with the requirement for prompt payment.

**Waiver of prompt payment by written agreement; disclosure requirements**

(b) Notwithstanding the provisions of subsection (a) of this section and subject to such terms and conditions as the Secretary may prescribe, the parties to the purchase and sale of livestock may expressly agree in writing, before such purchase or sale, to effect payment in a manner other than that required in subsection (a) of this section. Any such agreement shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction.

It is clear and well-established that the above-quoted § 228b is critical in determining whether a transaction was a cash sale or a credit sale for purposes of 7 U.S.C. § 196. See S.Rep. No. 932, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. and Ad.News 2267, 2278; *In re Gotham Provision Co., Inc.*, 669 F.2d 1000, 1005 (5th Cir.1982); *Hedrick v. S. Bonaccurso and Sons, Inc.*, 466 F.Supp. 1025, 1031–32 (E.D.Pa.1978). More specifically, the Court in *Hedrick, supra,* stated at 466 F.Supp. 1032:

"[W]hen Congress defined a 'cash sale' in 7 U.S.C. § 196(c) as a 'sale in which the seller does not expressly extend credit to the buyer,' Congress meant that there be no § 228b(b) express agreement in writing."

9 C.F.R. § 201.200, which was issued by the Secretary of Agriculture under the authority of 7 U.S.C. § 228b, states, in part:

"No packer ... shall purchase livestock on credit ... unless: (1) Before purchasing such livestock the packer obtains from the seller a written acknowledgment as follows:

On this date I am entering into a written agreement for the sale of livestock on credit to _____, a packer, and I understand that in doing so I will have no rights under the trust provisions of section 206 of the Packers and Stockyards Act, 1921, as amended (7 U.S.C. 196, Pub.L. 94–410), with respect to any such credit sale...."

■ Based upon the above-quoted provisions of 7 U.S.C. § 196, 7 U.S.C. § 228b, and 9 C.F.R. § 201.200, we conclude that a sale is a cash sale under 7 U.S.C. § 196(c) unless the seller has signed a written acknowledgment to the contrary which is the substantial equivalent to that contained in 9 C.F.R. § 201.200, *In re Gotham Provision Co., Inc., supra,* supports our conclusion. In that case, an issue was whether or not two documents required a finding that the livestock sellers had extended credit to the buyer under 7 U.S.C. § 196(c). In finding for the sellers on this issue, the Court stated, at 669 F.2d 1007–08:

"No matter how one chooses to characterize these documents, it is clear to this court that they do not constitute an express extension of credit. Not only do these documents fail to contain the language required by 9 C.F.R. § 201.200 or the substantial equivalent thereof, they do not indicate the express intention of the parties to enter into a credit arrangement, nor do they indicate that the sellers intended to waive protection of the trust provisions of the statute. These documents do not, therefore, transform the appellees from cash sellers to credit sellers."

In the present case, the plaintiff and the debtor, on March 28, 1984, signed a handwritten agreement which stated:

"For all hog deliveries beginning March 29, 1984 from G and S to Arbogast and Bastian, Inc., we will pay by wire trans-

fer on the fourth business day following delivery."

The sales made following this agreement are the disputed sales. There is no basis other than this agreement for questioning that the sales were cash sales under 7 U.S.C. § 196(c).[2]

■ It is obvious that the agreement between the parties was not, nor was it intended to be, the substantial equivalent of the written acknowledgment contained in 9 C.F.R. § 201.200. In particular, the plaintiff did not agree to make credit sales to the debtor nor did he in any way agree to waive his statutory trust rights under the Packers and Stockyards Act. Therefore, in accordance with our foregoing analysis, we hold that the livestock sales in question were "cash sales" under 7 U.S.C. § 196(c) and that the plaintiff is entitled, as to those sales, to the status of a beneficiary of the statutory trust established by the debtor pursuant to 7 U.S.C. § 196(b).

---

**2.** The undisputed purpose of the agreement was actually to speed up the plaintiff's receipt of payments from the debtor. It is also undisputed that the plaintiff, at the time the agreement was signed, expressly stated to the debtor's representative that he did not intend the agreement to waive any of his rights under the statutory trust provisions of the Packers and Stockyards Act.