James A. HEDRICK

v.

S. BONACCURSO & SONS, INC., Continental Bank, Samuel Bonaccurso, and Mary Bonaccurso.

Civ. A. No. 77–2435.

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1978.

Stephen D. Teaford, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

C. Gary Wynkoop, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Continental Bank.

Steven W. Angstreich, Krimsky, Luterman, Stein & Levy, Philadelphia, Pa., for S. Bonaccurso & Sons, Inc., Mary Bonaccurso & Samuel Bonaccurso.

## MEMORANDUM

HANNUM, District Judge.

Presently before the Court are four cross-motions for summary judgment. It appearing that genuine issues of material fact exist as to whether Mary Bonaccurso is a "packer" as defined by 7 U.S.C. § 191 and as to the terms of the agreement for the sale of cattle by plaintiff to S. Bonaccurso & Sons, Inc., which agreement forms the basis for defendants' counterclaims, the motion of individual defendants Mary Bonaccurso and Samuel Bonaccurso for summary judgment against plaintiff is DENIED, and plaintiff's motion for summary judgment against individual defendants Mary Bonaccurso and Samuel Bonaccurso is similarly DENIED. It appearing that plaintiff is an "unpaid cash seller" entitled to participate in a statutory trust created by the Packers and Stockyards Act, as amended, 7 U.S.C. § 196, but that the Court cannot determine all the claims of all the parties by these motions, plaintiff's motion for summary judgment against defendant Continental Bank is DENIED, and defendant Continental Bank's motion for summary judgment against plaintiff is DENIED. Partial summary adjudication under F.R.Civ.P. 56(d) is entered by appropriate order on the material facts recited in Part 7 of this opinion.

*Factual Background.*

In separate transactions from the 4th through the 19th of April, 1977, plaintiff sold cattle to S. Bonaccurso & Sons, Inc., (SBI) with a purchase price of over $260,-000. On May 13, 1977, plaintiff notified SBI by letter to the attention of Samuel Bonaccurso that payment had not yet been received and that plaintiff was notifying the Packers and Stockyards Administration of the Department of Agriculture of SBI's delay in payment so as to preserve plaintiff's interest in a statutory trust under which the purchaser holds livestock and proceeds therefrom for the benefit of its unpaid cash sellers. In June, 1977, SBI defaulted in repaying working capital loans to Continental Bank which held a perfected security interest in SBI's inventory and proceeds therefrom under Pennsylvania's version of Article 9 of the Uniform Commercial Code, PA.STAT.ANN. tit. 12A § 9–101 *et seq.* On June 20, 1977, Continental Bank exercised its rights upon SBI's default, took possession of livestock inventory, and directed certain of SBI's account debtors to

make payment directly to the Bank instead of to SBI.[1]

*Procedural Background.[2]*

The amended complaint seeks recovery on four counts for damages arising out of plaintiff's sale of cattle from April 4, 1977, through April 19, 1977. Count I is an action on the price against S. Bonaccurso & Sons, Inc. (SBI), for cattle admittedly accepted but not paid for. Count II also against SBI seeks recovery for certain violations of the Packers and Stockyards Act (the Act), 7 U.S.C. § 181 *et seq.* Count III against Continental Bank asserts that plaintiff's right to livestock delivered by plaintiff to SBI and proceeds therefrom are impressed with a statutory trust in plaintiff's favor under the Act which defeats Continental Bank's perfected security interest. Count IV against Mary Bonaccurso and Samuel Bonaccurso, seeks recovery for violations of the Act by their corporation, SBI.

The answer of Mary Bonaccurso and SBI admit plaintiff delivered cattle and has not yet been paid by SBI. By way of defense, which in the interest of justice the Court, under F.R.Civ.P. 8(c), will treat as a counterclaim, Mary Bonaccurso and SBI allege that plaintiff failed to deliver all the cattle ordered, certain deliveries were short in weight and number of cattle, certain cattle were dead and therefore unacceptable for the purposes for which they were purchased, and all shipments for which plaintiff charged SBI were not actually deliv-

1. For purposes only of individual defendants' motion for summary judgment against plaintiff, the parties stipulated that during April, 1977, Mary Bonaccurso was the owner of all issued and outstanding capital stock of SBI and was the president and a director of SBI. For the same purposes, the parties further stipulated that during April, 1977, Samuel Bonaccurso was an officer and director of SBI and was responsible for buying livestock for SBI. These facts appear to be clearly supported by deposition testimony and are considered established for purposes of deciding all four motions herein, and for purposes of trial.

2. *Related Cases* — Four cases have come before this Court arising out of the demise of S. Bonaccurso & Sons, Inc., (SBI) and its failure to pay for cattle.

In *United States of America v. S. Bonaccurso & Sons, Inc.,* C.A. No. 77–2414, (filed June 14, 1977) the United States Attorney filed for temporary restraining order and preliminary injunction to enjoin SBI and its agents, officers and employees from further violations of the Packers and Stockyards Act, as amended, 7 U.S.C. § 181 *et seq.* (the Act), and from dissipating trust assets which SBI holds for the benefit of its unpaid sellers. On June 14, 1977, the Court granted a temporary restraining order and on June 21, 1977, entered a consent decree for a preliminary injunction against SBI and its agents, officers and employees.

In *James A. Hedrick v. S. Bonaccurso & Sons, Inc., Continental Bank, Samuel Bonaccurso and Mary Bonaccurso,* C.A. No. 77–2435, (E.D.Pa. filed June 15, 1977), plaintiff was a cattle seller and seeks to recover the amount of SBI's outstanding indebtedness, $261,250.83, and assets seized by the Bank under its perfected security interest which were subject to a statutory trust for plaintiff as an unpaid seller under the Act. 7 U.S.C. § 196. In two stipulations dated July 19, 1977, and approved by this Court on July 21, 1977, the parties agreed that Continental Bank would collect SBI's remaining accounts receivables and inventory, would hold the first $100,000 collected in a non-interest bearing account, would apply any excess to reduce SBI's indebtedness to the Bank, would distribute the proceeds of the custodial account to an unpaid cash seller of livestock to SBI who obtains a final judgment declaring he has priority over Continental Bank's perfected security interest, and, after all claims had been paid, would otherwise apply the balance in the custodial account to satisfy SBI's indebtedness to the Bank. (Hereafter this is referred to as the "July 19, 1977, stipulation.").

In *Frank A. Fillippo v. S. Bonaccurso & Sons, Inc., Continental Bank, Samuel Bonaccurso and Mary Bonaccurso,* C.A. No. 77–2973, (E.D.Pa. filed August 26, 1977), plaintiff was a cattle seller and seeks to recover the amount of SBI's outstanding indebtedness, $79,212.52, and his trust assets seized by the Bank under its perfected security interest.

A fourth action, *Gold Merit Beef Processors, Inc. v. S. Bonaccurso & Sons, Inc., Mary Bonaccurso and Samuel Bonaccurso,* C.A. No. 77–4342, (E.D.Pa. filed December 21, 1977), was terminated by stipulation dated May 25, 1977, and approved by this Court on June 6, 1977. By agreement, judgment was entered in favor of the plaintiff against SBI for $35,222.70 and judgment was entered against plaintiff as to the liability of Mary Bonaccurso and Samuel Bonaccurso. Counsel has cooperated in completing discovery in the *Hedrick* and *Fillippo* cases and the same depositions of Mary Bonaccurso, Samuel Bonaccurso, Ronald Vicari (for Continental Bank) and Josephine DeGeorge (a clerk for SBI) have been filed in both cases.

ered. SBI admits it is a "packer" under the Act. Mary Bonaccurso and the answer of Samuel Bonaccurso admit they are officers of SBI but deny they are "packers" subject to the Act and deny they are responsible for any acts, omissions or failures of SBI under the Act since they did not actively participate in the operation of the business and were without knowledge of the dealings between plaintiff and SBI.

The answer of Continental Bank denies plaintiff has a superior claim to livestock delivered by plaintiff in April, 1977, and proceeds therefrom. Continental Bank asserts it had a superior perfected security interest in those assets to which it had recourse when SBI defaulted. Continental also attacks the constitutionality of Congress creating a "secret lien" in favor of plaintiff superior to Continental's perfected security interest.[3] The answers of both SBI and Continental Bank deny plaintiff was a "cash seller" under the Act.

Part 1: *Choice of Law.*

The first issue for decision is which law— federal or state—determines the priority of plaintiff's and Continental Bank's claims to SBI's livestock inventory and proceeds? Prior to the 1976 amendments, the United States Supreme Court in *Mahon v. Stowers,* 416 U.S. 100, 111, 94 S.Ct. 1626, 1631, 40 L.Ed.2d 79 (1974), held that the Packers and Stockyards Act and regulations issued pursuant thereto providing that sellers are to be paid by the close of the next business

day after the livestock purchase, 9 C.F.R. § 201.43,

"[did] not necessarily support a conclusion that the regulation, designed to regulate payment procedures between a buyer and seller, was also intended to determine security rights between the sellers and third parties holding a valid [security interest under state law] on the packer's assets. Whatever might be the policy reasons for insuring that packers did not take unnecessary advantage of cattle sellers by holding funds for their own purposes, it is hard to see that those reasons would automatically require that such sellers stand on better footing than persons who have extended secured credit to a packer. And the regulation [9 C.F.R. § 201.43] in no way suggests an intention to override established principles of state commercial law which might strike a different balance."

On remand, the Court of Appeals for the Fifth Circuit in *Matter of Samuels & Co., Inc.,* 526 F.2d 1238, 1248 (5th Cir. 1976), determined the unpaid seller's claim to livestock and proceeds was subordinate to the financier's perfected security interest under the Uniform Commercial Code as adopted in Texas.

■ Pub.L.No. 94-410, amending the Packers and Stockyards Act in 1976, congressionally changed the choice of state law rule *Mahon* announced to determine the priorities of claims made by an unpaid cash seller under the federal Act and by an unpaid secured lender under the Uniform

---

**3.** In the Memorandum Of Authorities In Support of its Motion for Summary Judgment, Continental Bank, at 17, reasserts the constitutional attack but gives no case authority. The constitutional issue need not be decided but the Court finds no constitutional impediment to Congress' action in creating the statutory trust of 7 U.S.C. § 196. In September, 1976, Congress amended the Act to create a trust for unpaid cash sellers of livestock. The Bank's security interest did not attach until its debtor acquired rights in the collateral, viz., in April, 1977, when plaintiff transferred livestock to SBI's possession. Pa.Stat.Ann. tit. 12A § 9-203(1). At the very same moment the livestock and any proceeds therefrom became impressed with a superseding statutory trust arising under federal law.

The Bank's security interest at all times was limited by Pa.Stat.Ann. tit. 12A § 9-104. The Packers and Stockyards Act, 7 U.S.C. § 196 "governs the rights of parties to and third parties affected by transactions in particular types of property." Pennsylvania's commercial law impaired Continental Bank's rights to collateral (livestock inventory and proceeds) which is excluded from Article 9. Congress denied no process due and impaired no obligation of contract but merely used the exclusion in § 9-104(a) of the Uniform Commercial Code to subject a particular type of property bought and sold in interstate commerce to a statutory trust and thereby to a federal schedule of priorities among claimants. *See generally, In Re Frosty Morn Meats, Inc., mem.,* BK. No. 77-31707 (M.D.Tenn., entered August 31, 1978).

Commercial Code as adopted in the states. The *Mahon* Court had found "no evidence in either the Act or the regulations that packers are to hold cattle or carcasses in trust until the sellers actually convert into cash the checks given them as payment for each sale." *Id.*, 416 U.S. at 106–107, 94 S.Ct. at 1629. In 1976, the Act was amended to specifically create a statutory trust for the benefit of the unpaid cash seller of livestock delivered and proceeds therefrom until the packer pays for his purchases. 7 U.S.C. § 196(b). As beneficiaries of the statutory trust, Congress intended unpaid cash sellers to satisfy their claims from the packer's assets (inventoried livestock delivered by the cash seller and accounts receivable and other proceeds from the sale of such livestock) before satisfying any Article 9 perfected security interest in those assets. *See*, 1976 U.S.Code Cong. and Admin.News, pp. 2267, 2271. The choice of law rule this Court applies is as follows: To the extent plaintiff and others in the position of unpaid sellers qualify as beneficiaries of the statutory trust set up by 7 U.S.C. § 196(b), the federal Act controls whether they have priority over Continental Bank's claims; to the extent plaintiff and such other sellers do not so qualify, Pennsylvania's version of Article 9 of the Uniform Commercial Code controls whether they have priority over the Bank's claims; the rights of plaintiff against the other defendants are determined initially by looking to the federal Act. *See also*, 7 U.S.C. § 228c; Pa.Stat. Ann. tit. 12A § 9–104(a).

## Part 2: *Can Plaintiff Bring a Private Cause of Action to Redress Violations of the Act?*

■ The memorandum of law in support of individual defendants Mary Bonaccurso's and Samuel Bonaccurso's motion for summary judgment argues that neither 7 U.S.C. § 228 authorizing the Secretary of the Department of Agriculture to enforce the provisions of the Act, nor 7 U.S.C. § 196 which creates a statutory trust for the benefit of unpaid cash sellers could be interpreted as granting plaintiff a cause of action. *See, Pacific Trading Co., et al. v. Wilson and Co.,*

*et al.,* 547 F.2d 367, 368 (7th Cir. 1976). This may be so, but as amended in 1976, 7 U.S.C. § 209(a) expanded the claims which may be enforced by private parties to include suits by an unpaid cash seller against a packer. *See*, 1976 U.S.Code Cong. and Admin.News at 2273. Plaintiff's amended complaint bases his cause of action on Section 308 of the Act, 7 U.S.C. § 209.

Having decided that the Act creates a cause of action for plaintiff's injury, the Court continues its analysis to determine whether a genuine issue of material fact exists to bar granting summary judgment under F.R.Civ.P. 56.

## Part 3: *Are the Individual Defendants "persons" and "packers" under the Act?*

Defendants admit SBI is a "packer" under the Act. Yet only if Mary Bonaccurso and Samuel Bonaccurso are "persons" under 7 U.S.C. § 182(1) can they be "packers" under 7 U.S.C. § 191, and only if they are "packers" can they be held liable for violating, *inter alia*, the duty 7 U.S.C. § 228b(a) puts on packers to deliver the full amount of the purchase price by the end of the next business day following delivery of purchased livestock (hereafter referred to as next day payment), the duty 7 U.S.C. § 228b(c) puts on packers not to delay payment, and the duty 7 U.S.C. § 196(b) puts on packers to hold livestock and proceeds therefrom in statutory trust for their unpaid cash sellers. A closely related question is whether the individual defendants are "persons" under 7 U.S.C. § 182(1) so as to be liable in actions brought under 7 U.S.C. § 209.

■ Given the closely held nature of the SBI corporation, his active management role and the fact that plaintiff's May 13, 1977, notice that SBI was delaying payment was addressed to him, the Court finds Samuel Bonaccurso was a "person engaged in the business . . of buying livestock in commerce for purposes of slaughter" and thereby finds him to be a "packer" under the Act. This finding is buttressed by 7

U.S.C. § 223 which imputes liability to the corporate packer "[for] the act, omission, or failure of any agent, officer, or other person acting for or employed by any packer," as well as deeming the act, omission, or failure that of such agent, officer or other person.

■ Mary Bonaccurso argues that when Congress in 1976 repealed those subsections of 7 U.S.C. § 191 dealing with stock ownership which would bring a "person" within the definition of "packer," it intended to not impose the Act's duties on her by virtue of her ownership of 100% of SBI's stock and her roles as president and a director of SBI. The Act does not read "actively engaged," but just classifies a "packer" as a person engaged in the business of buying livestock in commerce for purposes of slaughter. Although her deposition testimony uncovered certain ties between Mary Bonaccurso and SBI, there still exists a genuine issue of material fact as to whether Mary Bonaccurso was engaged in SBI's business so as to be deemed a "packer" like SBI. However, the Court does find that Mary Bonaccurso is a "person" under 7 U.S.C. § 182(1).

Part 4: *Can this Court pierce the corporate veil?*

No real piercing is necessary since any "person" who is a "packer" would be deemed liable for his own "act, omission or failure" committed while acting for or employed by any packer and within the scope of his employment. A Senate amendment which would have given the Secretary of Agriculture authority to narrow the definition of "packer" was withdrawn by the conference committee, *see,* 1976 U.S.Code Cong. and Admin.News at 2284, and nothing in the legislative history of Pub.L.No. 94–410 evidences an intent to narrow the definition of "packer." Nor does any intent appear to legislatively reverse *Bruhn's Freezer Meats v. U. S. Department of Agriculture,* 438 F.2d 1332, 1343 (8th Cir. 1971), which held:

> "[c]learly, an [administrative] order limited in its application only to the corporate petitioners would probably prove futile as the corporations could be dissolved and the individual [defendants] could then, under the cloak of new corporations, engage in the proscribed activities and thereby frustrate the purposes of the Act. The law is well settled that the 'corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute.'"

(citations omitted).

■ *Bruhn's Freezer Meats* was decided when only the Secretary of the Agriculture could sue to enforce provisions of the Act. With the advent of his cause of action under 7 U.S.C. § 209, the unpaid cash seller suing a packer who delays payment has standing similar to that only the Secretary once had and can collect damages from those who act as tentacles of the corporate packer. As in *Sebastopol Meat Company v. Secretary of Agriculture,* 440 F.2d 983, 985 (9th Cir. 1971), the state law limitations on the *alter ego* doctrine are not necessarily controlling in determining the permitted scope of private suits brought by individuals to enforce rights under a superseding federal statute. Under *Bruhn's Freezer Meats, supra,* and *Sebastopol Meat Company, supra,* the Court finds that the corporate device cannot immunize individual defendants from liability once it is found they are "persons" and "packers" under the federal Act. Thus, Samuel Bonaccurso is liable as a "packer" for "acts, omissions or failures" violating the Act committed on behalf of SBI, and depending on whether Mary Bonaccurso is proved to be a "packer" she may be similarly liable.

Part 5: *Is Plaintiff a "cash seller" Under the Act?*

Assuming no violation of the Act on seller's part, the only act disqualifying him from having a right to full payment by the close of the next business day following delivery of livestock is where the seller and packer expressly agree in writing under 7 U.S.C. § 228b(b) to waive next day payment and adopt some other manner of payment. Though initially unclear, it appears that

when Congress defined a "cash sale" in 7 U.S.C. § 196(c) as "a sale in which the seller does not expressly extend credit to the buyer," Congress' meant that there be no § 228b(b) express agreement in writing.

◼ Defendant Continental argues that plaintiff was not a cash seller because "not once during the six months preceding cessation of operations by [SBI], did they request, require or indeed expect [SBI] to pay for delivery of cattle in accordance with the prompt payment provisions of [7 U.S.C. § 228b]." Memorandum of Authorities In Support of Motions of Defendant Continental Bank for Summary Judgment at 20, Docket Entry No. 33. Continental would have this Court recognize course of dealing, *cf.* Pa.Stat.Ann. tit. 12A § 1–205, as a second source which might disclose an agreement to waive prompt payment. But the federal Act is very specific. The express agreement must be in writing and

"shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction."

7 U.S.C. § 228b(b). Regulations promulgated after the transactions herein set out the form for such agreements and the sources which must contain a record of the agreement. 42 Fed.Reg. 49926, 49929 (September 28, 1977) (to be codified in 9 C.F.R. §§ 201.43; 201.200). The regulations support the Court's interpretation of 7 U.S.C. § 228b that nothing but an express agreement in writing can operate as a waiver of the seller's right to next day cash payment for livestock. Defendant Continental Bank has pointed to no source and the Court has found no source in the pleadings or evidence which is recognized by 7 U.S.C. § 228b and discloses an agreement to waive plaintiff's right under 7 U.S.C. § 228b(a) to next day payment. The notion that when a cash seller is not paid in a timely manner he becomes a seller on credit would reduce the Act's prompt payment protection to a nullity and is rejected as contrary to Congress' intent. Plaintiff is therefore a "cash seller" for purposes of 7 U.S.C. §§ 196 and 228b.

Part 6: *What Assets Are Included in Plaintiff's Statutory Trust?*

◼ Plaintiff did not give the packer, SBI, written notice of delayed payment until Friday, May 13, 1977, and did not file such notice until Monday, May 16, 1977, when it was marked received by the Packers and Stockyards Administration. Exhibit P–4, Deposition of Mary Bonaccurso, Docket Entry No. 29. Thus, it was not until May 16, 1977, that plaintiff complied with the notice and filing requirements of 7 U.S.C. § 196(b) and preserved his rights as an unpaid cash seller to the statutory trust created by that section.

SBI purchased livestock from plaintiff on a "live weight" basis, Deposition of James A. Hedrick at 16, Docket Entry 31, and should have made payment in full by the close of the next business day following transfer of possession of the cattle to SBI. 7 U.S.C. § 228b. Allowing for the day after the sale date on which payment is due under 7 U.S.C. § 228b and the thirty days following that date in which an unpaid cash seller must give notice under 7 U.S.C. § 196(b) to both the delaying purchaser-packer and the Secretary of the Department of Agriculture, plaintiff has failed to preserve his interest in the trust for purchases of his livestock by SBI on a "live weight" basis transferred to SBI's possession on or before April 14, 1977. However, the notices do preserve plaintiff's right to participate in the statutory trust covering the full amount owed on his livestock transferred to SBI's possession on or after April 15, 1977.

◼ It is admitted that cattle delivered in April, 1977, to SBI was accepted but not paid for by SBI. Answer of S. Bonaccurso & Sons, Inc. and Mary Bonaccurso to Amended Complaint, at ¶ 10, Docket Entry No. 12; Answer of Samuel Bonaccurso to Amended Complaint, at ¶ 37, Docket Entry No. 16. The statutory trust consists of all livestock unpaid cash sellers transferred to SBI, and any proceeds therefrom, regardless of when any particular seller preserved

his right to participate in the trust. *See,* 1976 U.S.Code Cong. and Admin.News at 2279. A particular cash seller's interest in the trust is limited by two factors: (1) the amount of the defaulting packer's bona fide indebtedness, normally the unpaid price for cattle received, and (2) the price or indebtedness incurred on cattle transferred to the packer within thirty-one (31) days of the date the seller preserved his interest. (Cattle transferred within this latter period will be termed "preserved sales"). In the present case, plaintiff's preserved sales occurred on or after April 15, 1977. Were it not for SBI's counterclaim disputing the amount plaintiff charged SBI for his cattle, plaintiff could collect from the trust the full price charged on his preserved sales (assuming enough trust assets to similarly repay all other SBI cash sellers in full rather than pro rata on a portion of their qualifying preserved interests). With SBI's counterclaim, plaintiff can only be reimbursed from the trust for the full price charged for preserved sales minus any charges proved erroneous by SBI at trial. As a beneficiary of the statutory trust, plaintiff has priority over defendant Continental Bank under the amended Act as to so much of the trust as reimburses him for his preserved sales. While Continental Bank's perfected security interest gives it priority over plaintiff's claim arising from livestock transferred to SBI on or before April 14, 1977, (his unpreserved sales) any remaining trust assets derived from plaintiff's cattle stay in the "pool" and are held in statutory trust to satisfy the qualifying preserved claims of SBI's other unpaid cash sellers. *See,* 1976 U.S.Code Cong. & Admin.News at 2279. Continental Bank may obtain these latter assets under its perfected security interest only after SBI's other unpaid cash sellers have been repaid up to the amount of SBI's proven indebtedness or the value of their preserved interest in the trust, whichever is lesser.

■ This determines the assets as to which plaintiff has priority. The Act, 7 U.S.C. § 196(b), creates an interest in the statutory trust only until an unpaid cash seller has received payment in full for his livestock when he would by definition cease to be *unpaid*. On the issue of damages, plaintiff's claim against Continental Bank is factually inseparable from his claims against other defendants, since he cannot prove SBI's outstanding debt until he disproves SBI's counterclaim. As is decided in other parts of this opinion, plaintiff's burden at trial will be to prove SBI's indebtedness and to disprove SBI's counterclaims.

## Part 7: *Facts Which Will be Deemed as Established at Trial.*

■ Plaintiff's contract for the sale of livestock to SBI is the subject matter of his legal claim. *See, Clark v. Taylor,* 163 F.2d 940, 942 (2d Cir. 1947). It is on this same contract that defendant SBI has denied owing full payment and has claimed certain legally cognizable items of debit or credit not included in plaintiff's motion for summary judgment demonstrating that the amount claimed due is inaccurate. *Golden Oil Co., Inc. v. Exxon Co., U. S. A.,* 543 F.2d 548, 551 (5th Cir. 1976). Because genuine issues of material fact remain as to the details of the contract between plaintiff and SBI, for example, who was to bear the loss of dead cattle, how much livestock was ordered, and the extent to which plaintiff's deliveries failed to conform to SBI's orders, defendants' defenses which the Court has deemed counterclaims, *see,* Procedural Background, above, cannot be decided on these cross-motions for summary judgment. F.R.Civ.P. 56(c).

However, the Court's review of the pleadings and evidence discloses certain material facts which exist without substantial controversy and certain facts which are actually and in good faith controverted which makes partial summary adjudication appropriate under F.R.Civ.P. 56(d). *See,* Wright & Miller, Federal Practice and Procedure § 2737; Moore's Federal Practice, §§ 54.-35[1], 56.20[.3–3].

The Court finds the following material facts exist and will be deemed established at trial:

1) Plaintiff is a cattle dealer and "person" under the Packers and Stockyards Act, as amended (the Act).

2) S. Bonaccurso & Sons, Inc. (SBI) is a "person" and a "packer" under the Act.

3) During April, 1977, Samuel Bonaccurso was an officer and director of SBI, was responsible for buying livestock for SBI, and is a "person" and a "packer" under the Act.

4) SBI failed to pay in full for livestock transferred and accepted from plaintiff between April 4, 1977, and April 19, 1977.

5) Plaintiff made no express agreement in writing waiving his right to next day payment under the Act.

6) Plaintiff is an "unpaid cash seller" under the Act.

7) Plaintiff gave notice to SBI of the delayed payment on May 13, 1977, and filed that notice with the Packers and Stockyards Administration on May 16, 1977.

8) Plaintiff preserved his interest in the statutory trust under 7 U.S.C. § 196 on May 16, 1977.

9) Plaintiff's preserved interest in the statutory trust consists of sales of livestock plaintiff transferred to SBI on or after April 15, 1977, through April 19, 1977.

10) Mary Bonaccurso is a "person" under the Act, and during April, 1977, was the owner of all issued and outstanding capital stock of SBI and was president and a director of SBI.