724 F.Supp. 1373 (1989)
FRIO ICE, S.A., Plaintiff,
v.
SUNFRUIT, INC., John R. Plana, Jr., and Oswaldo P. Rodriguez, Defendants.
No. 89-1246-CIV.
United States District Court, S.D. Florida, Miami Division.
November 6, 1989.
*1374 *1375 Stephen P. McCarron, Steven A. Rafkin, Sures, Dondero & McCarron, Silver Spring, Md., Guy E. Motzer, Steel, Hector & Davis, Miami, Fla., for plaintiff.
Glenn E. Goldstein, Howard M. Camerik, Ruden, Barnett, McClosky, Smith, Schuster & Russell, Fort Lauderdale, Fla., for defendant Rodriguez.
Plana, pro se., for defendant.
No appearance for SunFruit.

MEMORANDUM ORDER
RYSKAMP, District Judge.

I. INTRODUCTION
THIS MATTER is before the court on plaintiff Frio Ice's request that the preliminary injunction entered July 7, 1989, against the corporate entity SunFruit be extended to the individual defendants John R. Plana, Jr. ("Plana"); and Oswaldo P. Rodriguez ("Rodriguez"); on Rodriguez' motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or for a more definite statement of the claims against him pursuant to Rule 12(e); and on Rodriguez' motion to strike the punitive damage claim from Count III of plaintiff's complaint pursuant to Rule 12(f).
For the reasons discussed below, Frio Ice's request to extend the preliminary injunction to Plana and Rodriguez is hereby DENIED, and the court's order of July 7, 1989, is VACATED. In addition, defendant Rodriguez' motions to dismiss and/or for a more definite statement and to strike plaintiff's punitive damages claim are GRANTED in part and DENIED in part.

II. INJUNCTIVE RELIEF UNDER PACA

A. Introduction: Injunction Entered July 7, 1989
Plaintiff Frio Ice sold perishable agricultural commodities, consisting of 19 shipments of asparagus, to defendant SunFruit from December 1988 to January 1989. Plana is president of SunFruit. Rodriguez is a 35-percent shareholder, and may be an officer as well. SunFruit has not paid for the asparagus it received from Frio Ice, and Frio Ice claims that SunFruit owes it $229,831.14 for the produce. SunFruit claims it owes Frio Ice only $79,460.94 and offered to pay this amount in full and final settlement. Frio Ice rejected this offer. The parties' dispute concerning the amount due stems from disagreement about the type of contract that covered the transaction.[1] Frio Ice claims that the contract required SunFruit to act as its agent, which allowed it to take a commission, deduct expenses, and then remit the proceeds back to Frio Ice. SunFruit argues that the asparagus was shipped under a regular sales arrangement pursuant to an f.o.b. contract.[2]
Because SunFruit refused to pay the entire amount that Frio Ice claimed was due, Frio Ice sought to preserve the trust benefits it claimed under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499e(c) (Supp. III 1985). To do so, Frio Ice filed the required notices of intent with the Secretary of the Department of Agriculture ("Secretary"). *1376 7 U.S.C. § 499e(c)(3) (Supp. III 1985). After filing such notices of intent, Frio Ice sought, and received, a preliminary injunction against SunFruit in this court. The injunction, entered on July 7, 1989, required SunFruit to place $229,831.14 into an interest bearing trust bank account, purportedly to satisfy its obligations under the PACA trust provisions. The relevant statutory provisions are set forth in the margin.[3] The injunction was entered on the strength of several unpublished federal district court orders,[4] which required PACA defendants to establish trust bank accounts. Frio Ice now seeks to have that injunction extended to Plana and Rodriguez as individuals.

B. Purpose of PACA Trust Provisions

1. Priority Accorded Commodities Creditors
After further consideration of the record and applicable law, the court has concluded that the establishment of a trust bank account such as required in the preliminary injunction finds no support in PACA language, legislative history, or reasoned precedent. See generally Fresh Western Marketing v. M & L Food Center, 707 F.Supp. 515, 516 (S.D.Fla.1989); DeBruyn Produce Co. v. Victor Foods, Inc., 674 F.Supp. 1405, 1407-08 (E.D.Mo.1987).
The language and operation of subsections 466e(c)(2) and (c)(3) automatically creates a statutory trust in a certain defined res, namely the commodities, products, receivables, and proceeds delineated in PACA. DeBruyn, 674 F.Supp. 1407. Subsection (c)(4) provides that:
The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.
7 U.S.C. § 499e(c) (Supp. III 1985). Nothing in the statute indicates that Congress intended to authorize district courts to order *1377 PACA defendants to establish separate trust bank accounts to enforce their sellers' right to payment from the statutory trust. DeBruyn, 674 F.Supp. at 1409.
Similarly, nothing in PACA's legislative history indicates a congressional intent that such a result would occur. See generally H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 405-19.[5] The court in DeBruyn provides a reasoned analysis of this legislative history, stating that section 499e(c), which contains the PACA trust provisions, "was enacted because of the inability of perishable agricultural commodity sellers to protect themselves from the bankruptcy of their buyers." DeBruyn, 674 F.Supp. at 1408. Accordingly, PACA protects perishable commodity sellers by making their interests in the trust res superior to the security interests that the buyers' lenders have perfected under U.C.C. Article 9. DeBruyn, 674 F.Supp. at 1408-09; In re Fresh Approach, Inc., 48 B.R. 926, 931 (Bankr.N.D.Tex.1985). This intent is evident in section 499e(c) itself, which notes that the trust provisions are intended to remedy a perceived burden on interstate commerce that results when buyers encumber commodities with lenders' security interests before paying for those commodities. 7 U.S.C. § 499e(c)(1).
Clearly, the primary purpose of the PACA trust provisions is to "move the unpaid produce creditor to the head of the line with respect to any distribution of a produce purchaser's assets." In re Fresh Approach, Inc., 48 B.R. at 931. The sellers' interests are protected in bankruptcy, for the trust corpus is not property of the bankruptcy estate. In re Fresh Approach, 51 B.R. 412, 418-22 (Bankr.N.D.Tex.1985); see also In re Frosty Morn Meats, Inc., 7 B.R. 988 (N.D.Tenn.1980) (decided under analogous Packers and Stockyards Act). Therefore, the assets subject to the PACA trust are distributed outside of the statutory bankruptcy scheme. In re Fresh Approach, 51 B.R. at 420.
Indeed, creditors with an interest in the assets of a PACA trust are entitled to priority even in a reorganization, when the debtor tries to remain an on-going concern. Id. A PACA creditor can demand immediate payment of outstanding debts, even if doing so would liquidate the company struggling to reorganize. Id. As the bankruptcy court in In re Fresh Approach recognized:
While in isolation this may seem like a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry. Congress has plainly decided it would be less disastrous to risk the liquidation of a single purchaser than to threaten the entire production chain with insolvency.
Id. at 420.

2. Actions to Enforce Payment from the Statutory Trust
Besides giving sellers protection in bankruptcy, the PACA trust provisions provide them with a means to obtain payment out of the statutory trust res by an action in federal district court. See 7 U.S.C. § 499e(c)(4)(i). Money damages may be obtained by complaint to the Secretary or by a civil action in federal court. 7 U.S.C. § 499e(b)(1)-(2) (Supp. III 1985). Thus, Frio Ice can continue to proceed in this court to enforce payment from the statutory trust that was automatically created by the operation of subsections 499e(c)(2) and (3). See DeBruyn, 674 F.Supp. at 1407.

C. Order of July 7, 1989, Vacated
In summary, this court concludes that the decision in DeBruyn was reached through reasoned analysis of PACA's statutory framework and legislative history, unlike the unpublished opinions underlying its July injunction. Because the PACA statutory scheme does not support an injunction requiring the establishment of a separate trust bank account, this court, like that in DeBruyn, vacates its order of July *1378 7, 1989. See DeBruyn, 674 F.Supp. at 1406. Obviously, this vacated order will not be extended to Plana and Rodriguez, as Frio Ice requested.

D. Jurisdiction Over Injunctive Actions
Although PACA does not allow for an injunction requiring the establishment of a separate trust bank account, some authority indicates that Frio Ice as a private party may be entitled to an injunction requiring defendants not to dissipate the assets of the PACA statutory trust of which it claims the benefit.[6]See Dole Fresh Fruit Co. v. United Banana Co., Inc., 821 F.2d 106, 108 (2d Cir.1987); Fresh Western Marketing v. M & L Food Center, 707 F.Supp. 515, 516 (S.D.Fla.1989); DeBruyn Produce Co. v. Victor Foods, Inc., 674 F.Supp. 1405, 1409-10 (E.D.Mo.1987). This court does not agree.
This court concludes that it is without jurisdiction to entertain injunctive actions brought under PACA by private parties. It is axiomatic that federal courts are courts of limited jurisdiction. See Insurance Corp. v. Compagnie Des Bauxites, 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492, 500 (1982). The constitutional requirements for the exercise of federal judicial authority are delineated in Article III of the United States Constitution. See Const. art. III, § 2, cl. 1. Beyond such constitutional limitations, the "[j]urisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp., 456 U.S. at 701, 102 S.Ct. at 2104, 72 L.Ed.2d at 500.
The proper starting point for considering a statutory grant of jurisdiction is the wording of the statute itself. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 371-72, 98 S.Ct. 2396, 2401-02, 57 L.Ed.2d 274, 280-81 (1978); Delta Coal Program v. Libman, 743 F.2d 852, 855 (11th Cir.1984). The jurisdictional provisions of federal statutes are to be strictly construed. Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1040 (D.C.Cir.1986); In re Carter, 618 F.2d 1093, 1098 (5th Cir. 1980), cert. denied, Sheet Metal Workers Int'l Assn., AFL-CIO v. Carter, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). The jurisdictional section of the PACA trust provisions explicitly limits the jurisdiction of the federal district courts:
The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.
7 U.S.C. § 499e(c)(4) (Supp. III 1985). Clearly, this language indicates that this court has jurisdiction to entertain only injunctive actions brought by the Secretary of the Department of Agriculture. It does not support an action for injunctive relief brought by a private party.
Neither does the legislative history indicate that a private party, as opposed to the Secretary, may bring injunctive actions in federal court. Although the legislative history refers repeatedly to injunctive actions, it only mentions those actions brought by the Secretary. See H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 405, 410. The legislative history clearly states that "the Secretary may act for the benefits of unpaid suppliers in securing an order which will prevent the dissipation of assets that make up the floating trust." Id. at 410. The legislative history indicates that this limitation on available injunctive relief was intended to place the PACA trust provisions within the general statutory framework and preserve the Secretary's coordination of that framework:
If an investigation reveals the trust is being dissipated, each unpaid supplier-seller should be informed so that it will be able to protect its statutory trust rights. Except where violations are repeated or flagrant, the firm should be *1379 given a written warning and an opportunity to bring itself into compliance. Follow-up audits should be made after the warning is given to determine whether the firm has ceased dissipating the trust and achieved compliance with statutory requirements. If a firm persists in trust dissipation, the Secretary can initiate an injunctive proceeding in the U.S. district court. In cases of repeated or flagrant violations, the Secretary should consider institution of disciplinary action to suspend or revoke the the [sic] firm's trading license.
Id. at 411.
Requiring the Secretary to bring injunctive actions for the benefit of private parties does not impair the rights of those private parties.[7] In sum, if Frio Ice as a private party seeks to obtain an injunction, it must seek the Secretary's aid since the Secretary is vested with the exclusive statutory authority to bring such actions.

III. CLAIMS UNDER FLORIDA LAW

A. Prejudgment Attachment and Garnishment
PACA statutory remedies do not preclude the unpaid seller from obtaining other relief available under statute or common law. 7 U.S.C. § 499e(b) (1982).[8] Thus, Frio Ice argues that it is also entitled to injunctive relief under Florida law governing prejudgment attachment. See Fla. Stat. Ch. 76 (1987 and Supp.1989). This court may have diversity jurisdiction over this claim under 28 U.S.C. § 1332, but Frio Ice's complaint is inadequate at present for determining the citizenship of all defendants.[9] Even if complete diversity does not exist, this court has the power and discretion to hear a state claim pendent to the federal claim brought under PACA. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); see generally 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3567.1 (1984 and Supp.1989).
Nonetheless, while the court may have jurisdiction over Frio Ice's claim for prejudgment attachment, Frio Ice has not satisfied the statutory requirements for such a writ to issue under Chapter 76 of the Florida Statutes. The statutory requirements must be strictly observed to fulfill the requirements of procedural due process.[10] For example, this court cannot issue a writ of attachment until plaintiff *1380 posts a bond at least double to the amount demanded that is conditioned to pay defendant's costs and damages if attachment was improper. Fla.Stat. § 76.12 (1987).[11]
Furthermore, attachment is not the sole remedy that Frio Ice seeks under Florida law. Attachment is available only to enforce a creditor's rights against "the goods and chattels, lands and tenements" of the debtor. Fla.Stat. § 76.01. Attachment will not reach funds of money, such as accounts receivable, which instead are subject to garnishment proceedings under Chapter 77 of the Florida Statutes. See In re Emerald Plaza West, 47 B.R. 590, 591 (Bankr.S.D.Fla.1985); Fine v. Fine, 400 So.2d 1254, 1255 (Fla. 5th DCA 1981). The garnishment statute permits use of the remedy prejudgment against the actual debtor. Fla.Stat. § 77.031; see also Cerna v. Swiss Bank Corp. (Overseas), S.A., 503 So.2d 1297, 1299 (Fla. 3d DCA), review denied, 513 So.2d 1060, & 513 So.2d 1063 (Fla.1987).

B. Injunction to Prevent Transfer of Assets in Constructive Trust
Under Florida law, equity will create a constructive trust and compel restoration of its res if a defendant realized his gain through actual fraud, abuse of confidence, or other questionable means. ITT Community Development Corp. v. Barton, 457 F.Supp. 224, 230 (M.D.Fla. 1978) (citing Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (Fla.1927)). A federal court can enjoin transfer of such a trust res created by state law under the inherent powers doctrine. See ITT Community Development Corp., 457 F.Supp. at 232. To secure such an injunction, the plaintiff must show that the res is in probable danger of dissipation and that plaintiff has a reasonable likelihood of success on the merits of the constructive trust claim. Korn v. Ambassador Hotels, Inc., 546 So.2d 756, 757 (Fla. 3d DCA 1989); see also Hudson Nat'l Bank v. Shapiro, 695 F.Supp. 544, 550 (S.D.Fla.1988) (Florida recognizes trust when monies in bank account wrongfully obtained and funds traceable to that account). Yet, even when such an injunction is available, plaintiffs must post bond to prevent harm to the defendants. ITT Community Development Corp., 457 F.Supp. at 234; Tabsch v. Nojaim, 548 So.2d 851 (Fla. 3d DCA 1989).
In this case, in contrast, Frio Ice claims only that a constructive trust was created by federal statutory law pursuant to PACA, not that Florida equity jurisprudence has created such a trust. Because Frio Ice relies solely on federal law in its action for injunctive relief, this court's equity power under the doctrine of inherent powers is limited by the PACA jurisdictional provision that allows only the Secretary of Agriculture to seek injunctive relief. ITT Community Development Corp. v. Barton, 569 F.2d 1351, 1359 (5th Cir.1978) (federal court possesses all common law equity tools subject to congressional limitation); ITT Community Development Corp., 457 F.Supp. 224, 232 (M.D.Fla.1978) (same). At present, this court has no basis under either federal or state law to enjoin transfer of the res of the constructive trust.

IV. RODRIGUEZ' MOTION TO DISMISS AND/OR FOR A MORE DEFINITE STATEMENT AND MOTION TO STRIKE PUNITIVE DAMAGES

A. Introduction
The court now considers whether Frio Ice's complaint states a cause of action for *1381 relief under PACA against Rodriguez. Rodriguez has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or for a more definite statement of the claims against him pursuant to Rule 12(e). Rodriguez has also moved to strike the punitive damage claim from Count III of plaintiff's complaint pursuant to Rule 12(f).
A complaint must not be dismissed under Rule 12(b)(6) for failure to state a claim, unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); Stone Mountain Game Ranch, Inc. v. M.D. Hunt III, 746 F.2d 761, 763 n. 4 (11th Cir.1984). If a complaint is ambiguous or does not contain sufficient information to allow the defendant to frame a responsive pleading, the proper remedy is a motion for a more definite statement under Rule 12(e). Sisk v. Texas Parks and Wildlife Dept., 644 F.2d 1056, 1059 (5th Cir.1981). Looking to these standards, the court will examine each count of Frio Ice's complaint, focusing on whether it states a cause of action against Rodriguez as an individual.

B. Count I
Count I of Frio Ice's complaint asserts that defendants failed to maintain a PACA trust and requests that they be required to maintain this statutory trust under court supervision. As this court has interpreted the jurisdictional provision of the PACA statutory trust provisions, Count I must be dismissed in its entirety, because Frio Ice can prove no set of facts that will entitle it to injunctive relief. Indeed, this court lacks jurisdiction over injunctive actions brought by private parties.

C. Counts II and V
Count II seeks relief for defendants' failure to pay trust funds to Frio Ice and requests an order requiring such payment. Trust beneficiaries may bring such actions in federal court under 7 U.S.C. § 499e(c)(4)(i) (Supp. III 1985). For purposes of analyzing whether Count II is sufficient against Rodriguez, the court will simultaneously consider Count V, which seeks judgment against defendants for their failure to pay the amount Frio Ice demands under 7 U.S.C. § 499e(b)(2) (Supp. III 1985).[12] The court will consider these counts together in ruling on Rodriguez' motions, because the sufficiency of both counts depends on whether an individual can be liable under PACA.
Anyone found to be a PACA "dealer"[13] is subject to liability under PACA section 499b, which makes unlawful unfair conduct including the failure to maintain a statutory trust as required by section 499e(c). See 7 U.S.C. § 499b(4) (Supp. III 1985). If a PACA dealer violates any provision of section 499b, "he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such a violation." 7 U.S.C. § 499e(a) (1982). If deemed a PACA "dealer," an individual is liable for his own acts, omissions, or failures while acting for or *1382 employed by any other dealer. 7 U.S.C. § 499e(a).
Because the PACA trust provisions were enacted only in 1984, little guidance exists as to what activity would cause an individual to be considered a "dealer" under the act. Nonetheless, guidance in interpreting this term can be gleaned from interpretation of similar trust provisions in the Packers and Stockyards Act ("PSA"), on which the PACA trust provisions were modelled. See Packers and Stockyards Act of 1921, 7 U.S.C. § 196 (1982).[14] In particular, the court looks to interpretation of the term "packer" as defined in 7 U.S.C. § 191 (1982).[15]
In general, courts have broadly defined the term "packer" under the PSA. See Guyerson and Block, Agricultural Lending in a Troubled Economy, 16 Col.Lawyer 1773, 1781 (1987) (and citations therein). Of particular interest is the decision in Hedrick v. S. Bonaccurso & Sons, Inc., 466 F.Supp. 1025 (E.D.Pa.1978), in which the court found an individual defendant was a "packer" subject to PSA liability. The court in Hedrick looked to the closely-held nature of the corporation, the individual's active management role, and the fact that the plaintiffs addressed notices about the trust requirements to the individual officer. Id. at 1030-31.[16]See also Peterman v. United States Department of Agriculture, 770 F.2d 888, 889 (10th Cir. 1985) (individual doing business as meat locker operator liable under PACA because controlled certain franchisee activities, including marketing operations).
Rodriguez attacks the applicability of Hedrick by arguing that precedent under the PSA does not apply universally to PACA.[17] However, Rodriguez fails to demonstrate why the principles underlying Hedrick should not apply in this case, nor why this court should not heed Congress' explicit instruction that the PACA trust provisions be interpreted "in the same manner" as those in the PSA. See H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin. News 405, 407. That Frio Ice contracted with SunFruit, the corporate entity, does not necessarily absolve Rodriguez of PACA liability. See Hedrick, 466 F.Supp. at 1031. Neither must plaintiff allege that defendant Rodriguez is SunFruit's alter ego under Florida law. State law limitations on the alter ego doctrine do not determine the scope of private suits brought to enforce rights under a superceding federal statute such as PACA. See id.
In sum, Hedrick is persuasive authority for the proposition that individual defendants may ultimately be liable under PACA. Furthermore, Frio Ice has stated sufficient parallels with Hedrick to allege that Rodriguez is individually liable under PACA. Frio Ice alleged that Rodriguez was an officer and principal who directed SunFruit operations. Frio Ice also alleged that it provided all defendants with notice of its intent to preserve the trust benefits it *1383 claimed under PACA. Accordingly, Counts II and V state a cause of action under PACA sections 499a(6) and 499e(a) against Rodriguez.

D. Counts III and VII
Count III asserts a claim for defendants' fraudulent accounting of commodities sales, in violation of common law and 7 U.S.C. § 499b(4). It seeks $229,831.14 in compensatory damages and $250,000 in punitive damages. Count VII seeks relief against Rodriguez for misappropriation of trust funds, requesting judgment of $229,831.14.
Regarding these counts, Rodriguez' motion for a more definite statement will be granted for failure to conform with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Frio Ice has failed to aver the circumstances constituting fraud as to Rodriguez with sufficient particularity, because it has not linked fraudulent conduct to Rodriguez. Nor may Frio Ice rely on this court's July hearing to lend particularity to these counts as they pertain to Rodriguez.[18]See generally 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1357 (1969 and Supp.1989) (on motion to dismiss only complaint and attachments considered).
Also as to Count III, Frio Ice has not provided evidence showing a reasonable basis for recovering punitive damages against Rodriguez, as required by Fla.Stat. § 768.72 (1986 Supp.1989). Thus, the punitive damages claim included in Count III of the complaint will be striken as to Rodriguez. Frio Ice may renew its claim for punitive damages against Rodriguez should evidence providing such a reasonable basis materialize.

E. Count IV
As to Count IV, which seeks attorneys' fees, the court finds that because PACA does not expressly provide for awards of attorneys' fees, this court will not imply such an award. See In re W.L. Bradley Co., Inc., 78 B.R. 92, 95 (E.D.Pa. 1987) (citing Alyeska Pipe Line Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Frio Ice's demand for these fees will be striken from Count IV as to all defendants.

V. CONCLUSION
For the reasons discussed above, it is hereby:
ORDERED and ADJUDGED that the court's order of July 7, 1989, is VACATED. In addition, it is hereby:
ORDERED and ADJUDGED that Rodriguez' motion to dismiss Frio Ice's complaint and/or for a more definite statement and motion to strike punitive damages from Count III are ruled on as follows:
Count I, motion to dismiss GRANTED sua sponte as to all defendants for lack of jurisdiction;
Count II, motion to dismiss and/or for a more definite statement DENIED;
Count III, motion to dismiss DENIED; motion for a more definite statement GRANTED as to Rodriguez, with Frio Ice given twenty (20) days from the date of this order to amend its pleading; motion to strike punitive damages GRANTED as to Rodriguez, with Frio Ice allowed to renew this claim should it acquire evidence providing a reasonable basis thereof;
Count IV, motion to dismiss GRANTED sua sponte, dismissing plaintiff's prayer for attorneys' fees as to all defendants;
Count V, motion to dismiss and/or for a more definite statement DENIED;
*1384 Count VII, motion to dismiss DENIED; motion for a more definite statement GRANTED as to Rodriguez, with Frio Ice given twenty (20) days from the date of this order to amend its pleading.
DONE and ORDERED.
NOTES
[1] In the hearing conducted for the preliminary injunction, Plana initially denied that his signature appeared on various documents relating to the contractual arrangement between Frio Ice and SunFruit. The court resolved this issue against Plana at the hearing. Such evidence received on application for a preliminary injunction is part of the record and need not be repeated at trial. Fed.R.Civ.P. 65(a)(2).
[2] Under a f.o.b.  or free on board  contract, the buyer has the right of inspection at the destination of the goods to determine whether the produce shipped complies with contractual terms. See 7 C.F.R. § 46.43(h)(i) (1989).
[3] (c) Trust on commodities and sales proceeds for benefit of unpaid suppliers, sellers, or agents; preservation of trust; jurisdiction of courts

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.
(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association ... and its members.
(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary....
(4) The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.
7 U.S.C. § 499e(c) (Supp. III 1985).
[4] See Raymond L. Park, Inc. v. Continental Farms, No. 89-1364 (C.D.Calif. March 8, 1989); DeBruyn Produce Company et al. v. Richmond Produce Company, et al. (In re Richmond Produce Co., Inc.), Ch. 11 Case No. 4-89-00513-N3, Adv. No. 4-89-0078-AJ (Bankr.N.D.Calif. March 2, 1989); Lyle Currie v. So Good Potato Chip Co., No. 88-2320-C5 (E.D.Mo. Dec. 12, 1988); Finest Fruits, Inc. v. Ed Boker, Inc., et al., No. 86 Civ. 3903 (S.D.N.Y. May 30, 1986); Finest Fruits, Inc. v. Freshville Produce Distributing, Inc., No. 86 Civ. 7621 (S.D.N.Y. Oct. 23, 1986); Goodie Brand Packing Corp. v. B. Eisner Produce Corp., No. 86 Civ. 8747 (S.D.N.Y. Dec. 1, 1986).
[5] No Senate Report was submitted with the amendment involving the PACA trust provisions. H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405.
[6] The trust assets need not be segregated but can be preserved as a nonsegregated floating trust, with all of a firm's commodity related liquid assets commingled. See DeBruyn, 674 F.Supp. at 1409 (citing 7 C.F.R. § 46.45(c)); see also H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 406, 407, 409, 414.
[7] The court notes that in one unpublished decision on which Frio Ice relies for the issuance of a preliminary injunction, the Department of Agriculture did appear in an amicus capacity. See Finest Fruits, Inc. v. Ed Boker, Inc., et al., No. 86 Civ. 3903 (S.D.N.Y. May 30, 1986) (hearing transcript at 2-3). However, the hearing transcript of the decision in Finest Fruits does not include discussion of the jurisdictional provision in § 499e(c)(4). In addition, the decision was rendered before that in DeBruyn Produce Co. v. Victor Foods, Inc., 674 F.Supp. 1405 (E.D. Mo.1987), apparently the first case in which the court refused to issue an injunction requiring a PACA defendant to establish a separate trust bank account. See also Fresh Western Marketing v. M & L Food Center, Inc., 707 F.Supp. 515, 516 (S.D.Fla.1989) (following DeBruyn in deciding that PACA language and legislative history did not support establishment of separate trust bank account).
[8] Congress intended that the remedy provided to private plaintiffs in § 499e(c)(4)(i) be in addition to existing remedies under PACA, "including reparation proceedings before the Secretary, court actions, or other existing remedies." See H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 410. The regulations promulgated under PACA provide detailed rules of practice for administrative proceedings before the Secretary. 7 C.F.R. Pt. 47.
[9] Frio Ice states that it is a Peruvian company with its principal place of business in Lima, Peru. Frio Ice alleges, on information and belief, that SunFruit is a Florida corporation with its principal place of business in Florida. However, Frio Ice makes no allegations regarding the citizenship of Plana and Rodriguez.
[10] The Florida provisions involving prejudgment attachment recently were amended to reflect due process concerns after the decision in Unique Caterers, Inc. v. Rudy's Farm Company, 338 So.2d 1067, 1071-72 (Fla.1976) (holding previous statute unconstitutional because did not require judge to issue writ, supporting affidavit alleging debt due, or immediate post-seizure hearing). The statutory requirements for attachment must be construed narrowly because of the extraordinary nature of the remedy. Cerna v. Swiss Bank Corp. (Overseas), S.A., 503 So.2d 1297, 1299 (Fla. 3d DCA), review denied, 513 So.2d 1060, & 513 So.2d 1063 (Fla.1987) (citing Fine v. Fine, 400 So.2d 1254, 1255 (Fla. 5th DCA 1981)).
[11] The statute requires that a plaintiff move for a writ of attachment by demonstrating the statutory grounds for the writ with specific facts in a verified complaint or a separate affidavit. Fla. Stat. § 76.08 (1987). Frio Ice's claim for prejudgment attachment is somewhat conclusory, undoubtedly because it anticipated that PACA would provide sufficient equitable relief. Frio Ice may be entitled to prejudgment attachment pursuant to the statutory grounds in Fla.Stat. § 76.04(1), (10) (1987), because it argues that defendants will fraudulently part with its property before judgment can be obtained against them, or because defendants are fraudulently disposing of its property. Under Florida law, prejudgment attachment is available against "assets which are held in the name of another and which have either been fraudulently transferred from the debtor or remain equitably owned by him." Cerna v. Swiss Bank Corp. (Overseas), S.A., 503 So.2d 1297, 1298 (Fla. 3d DCA) (citations omitted), review denied, 513 So.2d 1060, & 513 So.2d 1063 (Fla.1987).
[12] Money damages may also be obtained by complaint to the Secretary. 7 U.S.C. § 499e(b)(1) (Supp. III 1985).
[13] PACA defines "dealer" as:

any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine.... Any person not considered as a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a "dealer".
7 U.S.C. § 499a(6) (amended 1981); see also 7 C.F.R. § 46.2(m).
[14] For legislative history discussing how the PACA trust provisions were modelled on those in the PSA, see H.R.Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 407; see also DeBruyn Produce Co. v. Victor Foods, Inc., 674 F.Supp. 1405, 1407-08 (E.D.Mo.1987); In re Fresh Approach, Inc., 51 B.R. 412 (Bkrtcy.N.D.Tex.1985); In re Fresh Approach, Inc., 48 B.R. 926, 928 (Bkrtcy.N.D.Tex.1985).
[15] Section 191 defines packers as meaning "any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce."
[16] The court in Hedrick refused to rule at that time whether the second individual defendant was a "packer" under PSA, stating that a genuine issue of material fact remained. Hedrick, 466 F.Supp. at 1031.
[17] Rodriguez also argues that Hedrick is readily distinguishable from the facts of the present case. Of course, this argument assumes the applicability of Hedrick. Whether Hedrick ultimately will be distinguishable is not now at issue. In the current posture of this case, plaintiff's complaint alleges sufficient facts about the individual defendants' control to fit within the framework of Hedrick and to survive a motion to dismiss.
[18] Evidence presented during hearings on the preliminary injunction did not show conclusively that Rodriguez participated in the fraudulent accounting of sales invoices for the asparagus acquired from Frio Ice. In contrast, evidence was presented to demonstrate that Plana fraudulently manipulated the sales invoices. This evidence is now part of the trial record, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.