674 F.Supp. 1405 (1987)
DeBRUYN PRODUCE CO., Plaintiff,
v.
VICTOR FOODS, INC., Defendant.
No. 87-2081C-(1).
United States District Court, E.D. Missouri, E.D.
December 14, 1987.
Jason M. Rugo, Bradley H. Lehrman, Gallop, Johnson & Neuman, St. Louis, Mo., Steven H. Kerbel, Stephen P. McCarron, Sures, Dondero & McCarron, Silver Spring, Md., for plaintiff.
Bruce Nangle, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on defendant Victor Foods, Inc.'s motion to rescind the order of this Court entered ex parte in favor of plaintiff DeBruyn Produce Co. on November 17, 1987. In that order, purportedly acting pursuant to 7 U.S.C. § 499e(c), the Perishable Agricultural Commodities Act (PACA) of 1930 as amended, the Court granted plaintiff's motion for emergency relief and ordered defendant to establish a trust bank account containing the sum of $103,252.50. Plaintiff contends that, pursuant to the Court's § 499e(c)(4) jurisdiction, the Court properly ordered defendant to establish a trust bank *1406 account as a means to enforce plaintiff's right to payment from the statutory trust created by § 499e(c)(2) and (3). Plaintiff relies upon several unpublished district court orders wherein the district courts, in actions pursuant to § 499e(c)(4), ordered defendants to establish trust bank accounts.
The full text of 7 U.S.C. § 499e(c), enacted in 1984, is set forth in the margin.[1] In summary, § 499e(c) provides as follows: (1) paragraph 1 sets forth the reason why Congress enacted the subsection; (2) paragraph 2 provides that, until full payment is made by perishable agricultural commodity buyers to perishable commodity sellers of the amounts owed as a result of a sale of perishable agricultural commodities, the buyers hold in trust for the benefit of the sellers the following: the perishable agricultural commodities sold, the buyers' inventories of products derived from such products, and the buyers' accounts receivables or proceeds from the sale of the commodities or of the derived products; (3) paragraph 3 provides the procedure by which unpaid sellers preserve the benefits of the statutory trust created by paragraph 2; and (4) paragraph 4 vests jurisdiction in the United States District Courts to entertain "actions by trust beneficiaries to enforce payment from the trust" and "actions by the Secretary to prevent and restrain dissipation of the trust."
Plaintiff sold perishable agricultural commodities, namely onions, to defendant. Defendant has not paid for the onions and plaintiff claims that defendant presently owes plaintiff $103,252.50 for the onions. Defendant disputes the amount it owes plaintiff for the onions. Plaintiff, an unpaid seller of perishable agricultural commodities, by filing the requisite notices of intent to preserve trust benefits with the United States Department of Agriculture, has satisfied the requirements of § 499e(c)(3) to preserve the benefits of the *1407 statutory trust created by § 499e(c)(2). Therefore, pursuant to § 499e(c)(2), defendant presently holds in trust for plaintiff the following: any portion of plaintiff's onions which defendant still possesses, defendant's inventories of food products derived from the onions, and defendant's accounts receivables or proceeds from the sale of the onions or of the food products derived from the onions. Defendant asserts that it has complied with the regulations set forth at 7 C.F.R. § 46.46 with respect to the maintenance of this statutory trust. Pursuant to § 499e(c)(4), plaintiff can now proceed in this Court to enforce payment out of the statutory trust created by § 499e(c)(2) and (3) the amount defendant owes plaintiff for the onions.
With this summary of the statute and of its application to the sale of onions by plaintiff to defendant in mind, the Court notes several apparent and related points from the plain text of the statute and from the legislative history of the statute. First, by operation of § 499e(c)(2) and (3) a statutory trust in certain defined res possessed by defendant has already been created. Thus, patently there is no need or justification for the Court to order defendant to set aside different property, namely $103,252.50 in cash, as the trust res and to establish a trust bank account to create a trust res. Second, the legislative history to § 499e(c) makes it clear that § 499e(c)(2) and (3) automatically created a statutory trust for the benefit of plaintiff. See 1984 U.S.Code Cong. & Admin.News at 407-413. The legislative history does not in any way support plaintiff's entitlement to the court-ordered establishment of a trust bank account. Third, § 499e(c)(4) provides for an action to enforce payment from "the trust." The language "the trust" refers to the statutory trust already created by the operation of § 499e(c)(2) and (3). It does not refer to some trust bank account which the Court orders established. Fourth, § 499e(c)(4)(ii) refers to "actions by the Secretary to prevent and restrain dissipation of the trust." This language, together with the provisions of 7 C.F.R. § 46.46 regarding how buyers maintain statutory trusts, demonstrates that buyers must comply with certain bookkeeping requirements so as not to dissipate (and thus so as to maintain) the trust res of the statutory trust for the benefit of the sellers. This confirms that a statutory trust for the benefit of plaintiff already was created by operation of § 499e(c)(2) and (3) (with the trust res being the commodities, products, receivables, and proceeds in the hands of defendant).
The language and operation of § 499e(c) demonstrates that a statutory trust in certain commodities, products, receivables, and proceeds already exists and that defendant holds those items in trust for plaintiff until such time as defendant pays plaintiff what defendant in fact owes plaintiff for the onions. Thus, the language and operation of § 499e(c) refutes plaintiff's contention that affirmative action by the Court in the nature of ordering defendant to establish a trust bank account is necessary at this time as a means to enforce plaintiff's right to payment from the statutory trust. Nevertheless, the Court will examine the background of § 499e(c) to determine if that background provides any support for plaintiff's entitlement to the relief it requests.
Section 499e(c) is patterned after a similar trust provision contained in the Packers and Stockyard Act and adopted in 1976, 7 U.S.C. § 196.[2]See 1984 U.S.Code Cong. *1408 & Admin.News 405, 407, 415; In re Fresh Approach, Inc., 48 B.R. 926, 931 (Bankr.N. D.Tex.1985). Prior to the adoption of § 196, if livestock buyers went bankrupt without having paid the livestock sellers, the livestock sellers' claims in bankruptcy to the livestock, and to the proceeds therefrom, held by the livestock buyers were subordinate to the buyers' lenders' UCC Article 9 perfected security interest in the same livestock and proceeds. Thus, in the bankruptcy proceeding, the buyers' lenders would be secured creditors and would receive the livestock and proceeds; the livestock sellers would be unsecured creditors and would receive little. Mahon v. Stowers, 416 U.S. 100, 94 S.Ct. 1626, 40 L.Ed.2d 79 (1974), on remand to, Matter of Samuels & Co., Inc., 510 F.2d 139, (5th Cir.) on rehearing 526 F.2d 1238 (5th Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); see In re Gotham Provision Co., Inc., 669 F.2d 1000 (5th Cir.), cert. denied, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982); Hedrick v. S. Bonaccurso & Sons, Inc., 466 F.Supp. 1025, 1029-1030 (E.D.Pa.1978). In response to the bankruptcy of several large livestock packers (buyers) wherein livestock sellers who were not paid by the buyers received little from the bankruptcy distribution because the buyers had given UCC Article 9 perfected security interests to lenders, Congress enacted § 196 in order to give livestock sellers protection if livestock buyers went bankrupt. 1976 U.S.Code Cong. & Admin.News 2267, 2279; see 7 U.S.C. § 196(a); In re Gotham, 669 F.2d at 1002-1003; Hedrick, 466 F.Supp. at 1030.[3]
The legislative history to § 499e(c) indicates that § 499e(c) was enacted because of the inability of perishable agricultural commodity sellers to protect themselves from the effects of the bankruptcy of their buyers. Section 499e(c) was intended to have the same operation as § 196. See 1984 U.S. Code Cong. & Admin.News at 407-413. In this vein, § 499e(c)(1) is instructive: the perceived burden on interstate commerce which the subsection was intended to remedy was the problem that buyers encumber the commodities by giving the buyers' lenders security interests in the commodities even though the buyers have not yet paid the sellers for the commodities. See 7 U.S.C. § 499e(c)(1). To remedy this problem, § 499e(c) gives perishable agricultural commodity sellers the same protection in bankruptcy which § 196 gives livestock sellers. Identical to the operation of § 196, the statutory trust created by *1409 § 499e(c)(2) and (3) makes the commodity sellers' interests in the commodities superior in bankruptcy to the buyers' lenders' UCC Article 9 perfected security interests. See supra note 3; In re Fresh Approach, Inc., 48 B.R. at 931, and 51 B.R. at 419-420. Thus, the primary legislative purpose of § 499e(c) does not lend any support to plaintiff's entitlement to the relief it requests.
In addition to giving sellers protection in bankruptcy, § 499e(c)(4) provides sellers with a means to obtain payment out of the statutory trust res by an action in federal district court. The right to bring an action in federal district court to collect monies owed furthers the general purpose of the PACA, namely assuring prompt payment to sellers. Yet, the existence of the right to bring an action to obtain payment out of the statutory trust does not imply that a district court should force the buyer who has properly maintained the statutory trust to set up a separate trust bank account. With respect to the contours of the federal district court action, the legislative history to § 499e(c) merely states that: "Unpaid supplier-seller beneficiaries who have preserved their right to trust benefits may file claims in the district courts of the United States requesting payment from the trust funds of monies owed in connection with fruit and vegetable transactions." 1984 U.S.Code Cong. & Admin.News at 410. Thus, nothing in the legislative history provides any indication that Congress anticipated that district courts would order buyers to establish trust bank accounts as a means to enforce sellers' right to payment from the statutory trust.
The Court has not found any published opinions involving actions pursuant to § 196 or § 499e(c)(4) wherein the district courts ordered buyers to establish trust bank accounts as a means to enforce sellers' right to payment from the statutory trust. In Dole Fresh Fruit Co. v. United Banana Co., Inc., 821 F.2d 106 (2nd Cir. 1987), an action pursuant to § 499e(c)(4), the district court issued a TRO requiring United Banana "not to dissipate the assets of the statutory trust of which Dole had claimed the benefit, see 7 U.S.C. § 499e(c)(2) (Supp. III 1985), and required the segregation of perishable agricultural assets subject to the trust or of the proceeds therefrom." 821 F.2d at 108. This TRO did not require United Banana to establish a trust bank account. Rather, this TRO was designed to maintain the status quo by preventing dissipation of the PACA trust assets. The Court notes that the segregation portion of the TRO is inconsistent with 7 C.F.R. § 46.46(c) which states that: "Trust assets are to be preserved as a nonsegregated `floating' trust. Commingling of trust assets is contemplated." The PACA statutory trust is preserved if the buyer makes the appropriate bookkeeping entries to identify what assets are part of the trust.

Conclusion
By operation of § 499e(c)(2) and (3) a statutory trust in certain res is created. Pursuant to § 499e(c)(4), a seller has a right to maintain an action to enforce payment from that statutory trust. Yet, there is nothing in the statute or its legislative history to indicate that a federal district court should require, as a means to enforce the seller's right to payment out of the statutory trust, the buyer to establish a trust bank account containing the amount of money which the seller claims is due and owing. Rather, the language and the operation of the statute refute plaintiff's contention that a court needs to order the establishment of a trust bank account in order to create a trust res for the statutory trust. In addition, the primary purpose of § 499e(c) is to give sellers protection in bankruptcy. This purpose does not lend any support to plaintiff's entitlement to the relief it requests. For the foregoing reasons, the Court concludes that plaintiff has not established its entitlement to an order requiring defendant to establish a trust bank account containing $103,252.50. At best, upon a showing that defendant is dissipating the assets of the statutory trust and is not making the appropriate bookkeeping entries to identify what assets are part of the trust, plaintiff might be entitled to an order in the nature of a TRO or preliminary injunction requiring defendant "not to dissipate the assets of the statutory *1410 PACA trust of which [plaintiff] [] claim[s] the benefit," Dole Fresh Fruit Co. v. United Banana Co., Inc., 821 F.2d 106, 108 (2nd Cir.1987), and requiring defendant by appropriate bookkeeping entries to identify what assets are part of the statutory trust. Therefore, defendant's motion to rescind is granted, this Court's Order of November 17, 1987, is rescinded, and plaintiff's motion for emergency relief is denied.
NOTES
[1] Section 499e(c) provides:

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.
(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association (as defined in section 1141j(a) of Title 12), and its members.
(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transactions and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.
(4) The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.
7 U.S.C. § 499e(c) (1987 Supp.).
[2] Section 196 provides:

(a) It is hereby found that a burden on and obstruction to commerce in livestock is caused by financing arrangements under which packers encumber, give lenders security interest in, or place liens on, livestock purchased by packers in cash sales, or on inventories of or receivables or proceeds from meat, meat food products, or livestock products therefrom, when payment is not made for the livestock and that such arrangements are contrary to the public interest. This section is intended to remedy such burden on and obstruction to commerce in livestock and protect the public interest.
(b) All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers; Provided, That any packer whose average annual purchases do not exceed $500,000 will be exempt from the provisions of this section. Payment shall not be considered to have been made if the seller receives a payment instrument which is dishonored: Provided, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 228b of this title, or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary.
(c) For the purpose of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer.
7 U.S.C. § 196.
[3] The specific way by which § 196 operates to give the livestock sellers protection in bankruptcy is as follows: Section 196 creates a statutory trust for the benefit of the livestock sellers in the livestock, the livestock products derived therefrom, the buyers receivables, and the proceeds from sales of the livestock and of the derived products. The livestock buyers therefore hold the livestock and etc. in trust for the benefit of the livestock sellers until the sellers are paid. The livestock sellers therefore continue to own the livestock and etc. even though it is in the possession of the livestock buyers. The livestock buyers do not own the livestock and etc. and thus the buyers' lenders do not obtain UCC Article 9 perfected security interests in the livestock and etc. Further, because the livestock buyers do not own the livestock and etc., the livestock and etc. do not become part of the bankruptcy estate of the livestock buyers-debtors. See 11 U.S.C. § 541(a); 1978 U.S.Code Cong. & Admin.News 5787, 5868 (legislative history to Bankruptcy Reform Act of 1978 discussing interplay of 11 U.S.C. § 541 and 7 U.S.C. § 196); In re Gotham, 669 F.2d 1000 (5th Cir.), cert. denied, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982); In re Fresh Approach, Inc., 48 B.R. 926, 931, and 51 B.R. 412, 419-420 (Bankr.N.D.Tex.1985); Hedrick, 466 F.Supp. at 1030.