**J.R. BROOKS & SON, INC. Plaintiff(s)**

v.

**NORMAN'S COUNTRY MARKET, INC. Defendant(s).**

**Bankruptcy No. 88–9144.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

March 27, 1989.

John A. Rudolph, Jr., Holland & Knight, Tallahassee, Fla., John M. Himmelberg, Mitchell H. Stabbe, Holland & Knight, Washington, D.C., for plaintiff.

Ronald Bergwerk, Jacksonville, Fla., for defendant.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came before the Court on March 8, 1989, on the motion of the plaintiff, J.R. Brooks & Son for a temporary restraining order and a preliminary injunction. Plaintiff, J.R. Brooks & Son, Inc. ("Brooks") filed this adversary proceeding against the Chapter 11 debtor-in-possession, Norman's Country Market, Inc. ("Norman's") seeking a judgment declaring that Norman's has violated the provisions of the Perishable Agricultural Commodities Act of 1930, as amended in 1984, 7 U.S.C. § 499a, et seq. ("PACA") and the regulations promulgated thereunder, ordering Norman's to segregate from the assets of this bankruptcy estate all perishable agricultural commodities and all inventories of food and other products derived therefrom together with any receivables or proceeds from the sale of such commodities; and to pay plaintiff's claim in the amount of $14,561.00, together with interest, costs and attorney's fees.

Norman's does not dispute Brook's claim but asserts that the transaction giving rise to the claim is not subject to the PACA and that even if it is, the relief sought by Brooks is premature at this time. For purposes of the preliminary relief sought by Brooks, the parties stipulated that all of the factual allegations contained in the verified complaint filed by Brooks would be assumed to be true and accordingly no evidence was presented at the hearing. The parties further stipulated that the only issue of fact before the Court would be whether or not the trust provisions of PACA applied to the instant transaction. Based on the pleadings and the arguments of counsel, we make the following findings of fact and conclusions of law.

Brooks is a corporation located in Homestead, Florida, which engages in the business of selling wholesale quantities of fresh fruit and vegetables in interstate commerce. Norman's is and has been a dealer and commissioned merchant of perishable and agricultural commodities as defined by PACA and is licensed under the

provisions of the PACA. Brooks is and has been a regular supplier of perishable agricultural commodities to Norman's and between June 2, 1988 and July 12, 1988, Brooks sold and delivered to Norman's $14,561.00 worth of perishable commodities for which Brooks has not been paid. These shipments of commodities originated in the State of Florida, consisted of products grown entirely within the State of Florida, and were delivered to Norman's within the State of Florida.

Brooks, in compliance with the requirements of the PACA gave the appropriate written notices to Norman's and to the Secretary of Agriculture of its right and intent to preserve its trust benefits under the PACA. On October 25, 1988, Norman's was notified by letter from J.R. Frazier, Acting Chief, PACA Branch Fruit & Vegetable Division of the United States Department of Agriculture that fifteen (15) produce creditors of Norman's had filed notices with the Secretary in order to preserve their trust benefits in the total amount of $126,592.46, of which some of that agency's review disclose that $83,970.85 appeared to qualify for trust protection and remained unpaid to ten of the creditors. Norman's was directed in that letter to immediately establish an interest bearing account for the benefits of such trust beneficiaries and that trust assets be deposited in the account in an amount sufficient to cover the qualifying PACA claims. This account has never been established and no action has been taken by Norman's to preserve or segregate any trust assets for the benefit of Brooks or any other PACA creditors. Norman's filed its voluntary petition for relief under Chapter 11 on July 21, 1988, and has been operating as a debtor-in-possession since that date.

■ Title 7, U.S.C. § 499e(c)(2) provides as follows:

(2) Perishable agricultural commodities received by a commissioned merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commissioned merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

This particular provision of PACA creates a non-segregated floating trust consisting of all perishable commodities of the commissioned merchant together with accounts receivable and proceeds from the sale of such commodities with such trust held for the benefit of unpaid suppliers. As such, these trust assets are not property of the bankruptcy estate. *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr.S.D.Texas 1986); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr.N.D.Texas 1985); *In re Super Spud, Inc.*, 77 B.R. 930 (Bankr.M.D.Fla. 1987); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505 (Bankr.E.D.Pa.1987); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr.C. D.Cal.1988). The threshold question to be addressed in this case is whether or not Brooks is entitled to claim the benefits of PACA in the instant case based on a wholly intrastate transaction. It is the position of Norman's that the PACA regulates only interstate and foreign commerce in perishable agricultural commodities and that pursuant to the definitions contained in 7 U.S. C. § 499a(3), the term "interstate or foreign commerce" relates only to commerce which passes from one state, territory, or the District of Columbia either to another state, territory or the District of Columbia, or through such a location and that accordingly the instant transactions were not in interstate foreign commerce. While this is an accurate definition of interstate or foreign commerce, the provisions of 7 U.S.C. § 499e are not on their face limited in their applicability transactions in interstate commerce. The provisions of this section, instead, apply to any "commissioned merchant, dealer, or broker" as is defined in § 499a. It is without question that Norman's is a commissioned merchant and is thus subject to the regulations of PACA. Norman's has cited no case law holding

that the PACA protections do not apply to a supplier dealing with a "commissioned merchant" licensed under the PACA but with respect to wholly intrastate transaction.

The power of Congress over interstate commerce extends to those intrastate activities which so affect interstate commerce so as to make regulation of such activities appropriate. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). To apply the PACA trust protections to out of state suppliers while denying them to in-state suppliers would, rather than advancing the free flow of interstate commerce, create an additional burden on such commerce. Since the corpus of the PACA trust consists of all perishable agricultural commodities, all inventories of food or other products derived therefrom, accounts receivable and proceeds from the sale of such products, the intrastate supplier of such commodities would, upon delivery of its shipment, be supplying property to be held in trust by the commissioned merchant for the benefit of others with no benefit flowing to the intrastate supplier. Thus, if there were unpaid PACA claimants who had shipped in interstate commerce, those claimants would be entitled to be paid from the proceeds of sale of the goods shipped by the intrastate supplier, such as Brooks in this case, with the intrastate supplier being relegated to the status of merely a general unsecured creditor. The practical effects of such a distinction would be that either commissioned merchants would be completely unable to purchase perishable agricultural commodities from in state suppliers or that all such transactions would of necessity be on a cash basis. Either of these two results would in our view constitute a sufficient burden on interstate commerce so as to justify the application of the provisions of § 499e to both interstate and intrastate transactions.

Having concluded that Brooks is entitled to the PACA protections with respect to this transaction, we must now address appropriate relief at this point in these proceedings. Brooks asks that we require Norman's to segregate from the other assets of the estate all property constituting the corpus of the PACA trust and hold it for Brook's benefit. Norman's argues that such would constitute an improper prejudgment attachment of its inventory. It also argues that Brooks is unlikely to ultimately prevail since PACA does not apply to this wholly intrastate transaction. This issue, however, has already been resolved.

■ All of the cases we have reviewed support the immediate sequestration of PACA trust assets. In *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr.S.D.Tex. 1986), the Court ordered the Chapter 11 debtor-in-possession to make immediate payment of over $150,000.00 which had previously been escrowed for payment of PACA claims. Likewise, in *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr.E.D. Pa.1987), the Court lifted the automatic stay and required immediate payment to Sunkist Growers, Inc., a PACA claimant, of $37,585.00 in trust proceeds. The difficulty presented in this case is that, unlike in the cited cases, the debtor in his case has done absolutely nothing to preserve any PACA assets for the benefit of PACA claimants. It has continued throughout this case to sell its perishable agricultural commodities and to use the proceeds for the general operation of its business. Notwithstanding the instructions from the U.S.D.A. to place in a separate trust account sufficient funds with which to pay pre-petition approved PACA claims, Norman's has failed to set aside any funds at all. Further, counsel for Norman's conceded that in all likelihood, the assets comprising the corpus of the "floating trust" would not be sufficient to satisfy all of the approved and outstanding PACA claims. In fact, during a subsequent hearing in the Norman's administrative case, the debtor reported that total inventory was approximately $75,000.00 of which only $18,000.00 consisted of produce. This was in contrast to approximately $350,000.00 total inventory in two separate stores when the Chapter 11 was filed.

It is abundantly clear that without immediate action, Brooks as well as all other PACA claimants will, if they have not already, lose all of the protection afforded to them by the PACA through the continued dissipation of the trust assets. To this end, an order will be entered directing Nor-

man's to immediately establish a separate escrow account and to place all proceeds received from the sale of perishable agricultural commodities and all inventories of food and other products received therefrom in such account. The funds placed in such account will not be disbursed for any purpose other than the purchase of additional inventory of like products, except pursuant to further order of this Court.

While the debtor shall be required to segregate and hold in trust all PACA assets and proceeds derived therefrom, Brooks is not entitled to payment of its claim ahead of the other PACA claimants. Where the trust assets are not sufficient to pay all PACA claims, the trust assets should be distributed on a pro rata basis to all beneficiaries who have protected their rights to the trust benefits. *Matter of United Fruit and Produce Co., Inc.,* 86 B.R. 14 (Bankr.D.Conn.1988). The debtor will be required to submit to the Court and to Brooks a monthly report reflecting sales and purchases of PACA trust assets and the disposition of all funds derived from such assets.

A separate order will be entered in accordance herewith.

DONE AND ORDERED.