**In re ATLANTIC TROPICAL MARKET CORP., Debtor.**

**Bankruptcy No. 89–13276–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

July 31, 1990.

Frank A. Kreidler, Lake Worth, (Mr. Kreidler is directed to provide conformed copies to the Trustee, Counsel for the Trustee, and the Debtor).

ORDER GRANTING SOUTH BAY GROWERS, INC. TO OBTAIN FUNDS COLLECTED BY TRUSTEE

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came on before this court on January 31, 1990, upon motion by South Bay Growers, Inc., (South Bay) to obtain funds collected by Trustee; for turnover of property not part of Debtor's estate; and for possession of trust corpus and interests including costs. The relevant facts are not in dispute. Atlantic Tropical Market, Corp. (Debtor) commenced operations on May 6, 1987. They were engaged in the sole business of buying and selling perishable agricultural commodities (PAC). On June 4, 1987, the Debtor's principal received a $40,000 donation from his father for use in the Debtor's corporation. In December of 1987, Debtor purchased a 1983 Mack truck. The following March, Debtor's principal transferred a 1983 Chevrolet Blazer to Debtor. Debtor also purchased other equipment for use in the business, the exact time frame of these purchases is unknown. Between December 22, 1988 and January 9, 1989, Debtor purchased and received a number of PAC from South Bay. In February 1989, South Bay timely filed notice of its intent to preserve trust benefits under the Perishable Agricultural Commodities Act (PACA) of 1930, as amended in 1984, 7 U.S.C. § 499a et seq. with the United States Department of Agriculture. The filings were for the unpaid purchases by Debtor. The Department then issued certificates of trust protection per PACA for South Bay. Other suppliers of PAC had similarly obtained trust protection on unpaid purchases by Debtor, the earliest of which was dated September 21, 1988. Debtor filed its petition for relief under Chapter 7 of the Bankruptcy Code on June 30, 1989. A Trustee was appointed for the Debtor and he liquidated Debtor's assets which included accounts receivables, the two motor vehicles mentioned above and also the other equipment. South Bay has sought to have its unpaid claim satisfied by disbursement of the monies collected by the Trustee from the sale of Debtor's assets.

All parties agree that PACA applies, that Debtor was obligated to hold a trust to the benefit of unpaid suppliers, that South Bay is an unpaid supplier who has properly perfected its interest in the trust, and that this trust is not property of the bankruptcy estate but belongs to the unpaid suppliers who have properly perfected their interest. The only contention is as to what assets comprise this trust. All agree the account receivables are part of the trust. However, there is disagreement as to whether Debtor's other assets are in the trust. South Bay contends they are but the Trustee disagrees. This is a question of first impression although there is case law regarding interpretation of the PACA trust. *In re Fresh Approach, Inc.*, 48 B.R. 926 (BK N.D.Tex.1985) (*Fresh Approach I*); *In re Fresh Approach, Inc.*, 51 B.R. 412 (BK N.D.Tex.1985) (*Fresh Approach II*); *In re Monterey House, Inc.*, 71 B.R. 244 (BK S.D.Tex.1986); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505 (BK E.D.Pa.1987); *In re Super Spuds, Inc.*, 77 B.R. 930 (BK M.D.Fla.1987); *In re United Fruit and Produce Company, Inc.*, 86 B.R. 14 (BK Conn.1988); *In re Al Nagelberg and Company*, 84 B.R. 19 (S.D. NY 1988); and *In re Norman's Country Market*, 98 B.R. 47 (N.D.Fla.1989). And, by analogy, the Packers and Stockyard Act of 1921 cases have shed some additional light on PACA trusts. See *In re Gotham Provision Company, Inc.*, 669 F.2d 1000 (5th Cir.1982).

The logical starting point is the statute, itself. Section 499e(c)(2) states, in pertinent part,

> Perishable agricultural commodities <PAC> received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities <PAC>, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

The above section states when a trust begins and additionally provides for how long the trust exists. The trust begins when PAC are "received by a commissioned merchant, dealer, or broker in all transaction ..." and exists "until fully payment of the sums owing in connections with such transactions has been received by <all> unpaid suppliers, sellers, or agents." Section 499e(c)(2). Therefore it is conceivable that this PACA trust would be in continuous existence throughout the life of a purchaser of PAC. Obviously the purchaser is in the best position of knowing the status of his or her debts and should therefore have the burden of indicating at what points in time it has no unpaid suppliers and that no trust exists. This burden of proof is outweighed by the interest Congress expressed in ensuring that suppliers of these commodities are fully paid. Section 499e(c)(1). Congress, in enacting this legislation, specifically indicated the trust to be nonsegregated and floating, regardless of the source of its assets, thus protecting late suppliers. H.R.Rep. No. 98–543, 98th Cong. 1st Sess. 9, reprinted in 1984 U.S. Code Cong.Ad.News 409. And, it is also clearly indicated that Congress intended to give superior interest to the supplier of PAC ahead of other secured creditors. See H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 9, reprinted in 1984 U.S.Code Cong.Ad. News 413. Unless the purchaser can prove otherwise, once he is in the business of buying and selling PAC, he is assumed to be holding a continuous trust fund for the benefit of unpaid suppliers.

Furthermore, if the trust exists, according to the statute, "all inventories of food or other products derived from perishable agricultural commodities, and *any receivables or proceeds from the sale of such commodities or products,* shall be held by such commissioned merchant, dealer or brokers in <the> trust for the benefit of *all* unpaid suppliers or sellers of such commodities ..." (emphasis added) Section 499e(c)(2). As the Committee noted,

> Under this provision there is no necessity to specifically identify all of the trust

assets through each step of the asset and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid suppliers ... to the extent of the amount owed them.

H.R. Rep. 98–543, at 5; 1984 U.S.Code Cong.Ad.News 409. Obviously, only the purchaser would know what source he uses to purchase his assets. This again places a burden on the purchaser to prove his acquired assets are not in the PACA trust. So, if the purchaser is in the sole business of buying and selling PAC, then purchases of other assets made during the trust period have to be assumed to be purchased "from proceeds from the sale of such commodities or products" derived from such commodities, unless a sufficient showing can be made by the purchaser that other discrete funds were used to purchase the other assets. It follows that, if the purchaser cannot prove the non-existence of the trust fund, then he has the burden of proving segregated funds apart from the trust fund were used to purchase other assets. Again, the interest of maintaining the superior secured creditor status for the properly perfected unpaid supplier under PACA outweighs the two burdens placed upon the purchaser to track the status of the trust fund and to provide evidence of other origin of purchases of assets. Case law supports this analysis, *In re Al Nagelberg and Company*, supra at 21 states "... if those assets can be traced into another asset held by the debtor, the new asset may be impressed with a constructive trust under ordinary trust principles." But, "(s)hould a dispute arise, it will be the Debtor's burden to establish which, if any, assets are not subject to the PACA trust." *Fresh Approach II*, supra at 422.

█ Therefore, the burden rests upon the purchaser to determine when the trust fund actually began and the duration of the fund. Otherwise it will be assumed the trust fund is established upon commencement of the business of buying and selling PAC and is continuously in existence throughout the life of purchasers business. Also, any assets purchased while the fund is in existence will be assumed to be pur-

chased with trust fund assets and will therefore become part of the trust fund assets, available to satisfy the claims of perfected unpaid suppliers.

█ Applying this reasoning to the facts of this proceeding, Debtor commenced operations May 6, 1987 and, without a showing to the contrary, it is assumed that Debtor received PAC, had unpaid suppliers and established a trust for the benefit of all unpaid suppliers at that point in time. Also, unless Debtor can show otherwise, the floating trust operated continuously throughout the life of the business. Consequently, any purchases of other assets by Debtor became commingled with the trust fund assets. The burden of showing discrete funding is upon Debtor. For example, there is nothing in the record to support that the $40,000 donation received in June was segregated and used to purchase the Mack truck six months later or for the purchase of the other equipment. Thus, it is considered commingled with the trust fund and part of those assets. However, the fact that the Blazer was only transferred and not purchased indicates it is not part of the trust assets.

The Mack truck and other equipment were purchased from assets of the trust fund and therefore are part of the trust fund assets. Any monies recovered by the Trustee from a sale of such assets should be placed in a separate interest-bearing account for the benefit of perfected trust beneficiaries.

It is therefore,

ORDERED and ADJUDGED, that South Bay's motion to obtain funds collected by the Trustee is hereby GRANTED. The Trustee is ordered to pay to South Bay its pro rata share of funds collected from the sale of the Mack truck and other equipment along with the recovered accounts receivables.

DONE and ORDERED.