**DRISCOLL POTATOES, INC., Plaintiff,**

v.

**N.A. PRODUCE CO., INC., and Nestor Balocos, a/k/a, Nestor Baloco, Defendants.**

Civ. A. No. 91–1445.

United States District Court, D. New Jersey.

May 14, 1991.

Bruce A. Feldman, Karsch & Meyer, New York City, for plaintiff.

Brian D. Keenan, Anthony M. Costa, Newark, N.J., for defendants.

## OPINION

LECHNER, District Judge.

Currently before the court is the application of plaintiff Driscoll Potatoes, Inc. ("Driscoll") for a preliminary injunction

1. Driscoll has submitted the following for consideration:

Memorandum of Law in Support of Application for a Preliminary Injunction ("Brief"); Affidavit of Rosie Davis ("Davis Affidavit"). Driscoll has also submitted a proposed order ("Proposed Order") which indicates Driscoll desires a preliminary injunction directing Defendants to place the amount owed Driscoll in a separate, interest bearing account in a nationally chartered banking institution.

No opposition has been received. Driscoll, however, has submitted a letter, dated 9 May 1991, from counsel for Defendants to counsel for Driscoll indicating Defendants do not oppose the application for a preliminary injunction in part because "no reasonable grounds for such opposition exist." This, however, is not a case in which Defendants have consented to the preliminary injunction. Consequently, despite the lack of opposition, it must be considered whether, as a matter of law, Driscoll is entitled to the sort of preliminary injunction sought.

pursuant to Fed.R.Civ.P. 65.[1] Driscoll seeks a preliminary injunction directing defendants N.A. Produce, Inc. ("N.A. Produce") and Nestor Balocos, also known as Nestor Baloco, ("Balocos") (collectively, "Defendants"), to comply with the statutory trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.* Specifically, Driscoll seeks an order directing Defendants to place in an interest-bearing account at a particular nationally chartered banking institution the amount of $11,068.50. For the reasons set forth below, Driscoll's application is denied.

*Facts*

Because no opposition has been received, the facts as alleged by Driscoll are not disputed. Driscoll, located in Idaho, is a dealer, broker and/or commission merchant of fresh potatoes. Davis Affidavit at ¶ 2. N.A. Produce, located in New Jersey, is a dealer, broker and/or commission merchant licensed under PACA. *Id.* at ¶ 3. Balocos is an officer, director and shareholder of N.A. Produce. *Id.* at ¶ 4.

On 18 January 1991, Driscoll sold N.A. Produce a wholesale lot of potatoes, a perishable agricultural commodity, for the price of $11,068.50. *Id.* at ¶ 5. This transaction, involving interstate commerce, is apparently governed by certain provisions of PACA, namely 7 U.S.C. § 499e(c).[2]

2. Section 499e(c) provides, in pertinent part:

(1) It is hereby found that a burden on commerce in perishable agriculture commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased ... encumber or gives lenders a security interest in, such commodities ... and any such receivables or proceeds from the sale of such commodities ... and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions ... and any receivables or proceeds from the sale of such commodities ... shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the

Under PACA, a dealer, broker or commission merchant of perishable agricultural commodities must hold all proceeds from the sale of such commodities in trust for the unpaid suppliers of the commodities. 7 U.S.C. § 499e(c)(2). The unpaid supplier will be entitled to the benefit of the trust only if it provides written notice of its intent to preserve the benefits of the trust to the dealer, broker or commission merchant who sold the commodities. *Id.* at § 499e(c)(3). Furthermore, the notice of intent must be filed with the Secretary of Agriculture. *Id.* Assuming the notice of intent has been properly given and filed, PACA provides "[t]he several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary [of Agriculture] to prevent and restrain dissipation of the trust." *Id.* at § 499e(c)(4).

Driscoll has not been paid for the potatoes sold to N.A. Produce. Davis Affidavit at ¶ 9. Therefore, under PACA, Defendants are required to hold any proceeds from the sale of potatoes supplied by Driscoll in trust for Driscoll. On 27 February 1991, and pursuant to PACA, Driscoll filed a notice of intent to preserve its rights in the trust with the Secretary of Agriculture. Davis Affidavit at ¶ 7. On the same day, Driscoll sent a copy of its notice of intent to Defendants. *Id.*

On 11 April 1991, Driscoll filed a complaint against Defendants. By its complaint, Driscoll seeks to enforce the trust provisions of PACA and to recover the $11,068.50 owed to Driscoll for the potatoes sold to N.A. Produce. The summons and complaint was served on 15 April 1991. No answer has yet been filed.

On 19 April 1991, Driscoll filed a motion for a preliminary injunction directing Defendants to place the price of the potatoes in trust, pursuant to PACA. Driscoll believes Defendants have been dissipating the assets of the trust. *Id.* at ¶ 10. Driscoll also contends Defendants have been using the proceeds from the sale of the potatoes to pay other creditors and suppliers of N.A. Produce. *Id.* at ¶¶ 8 & 10. As noted above, no opposition to this motion has been received.

*Discussion*

**A. Standard of Review**

To prevail on its application for a preliminary injunction, the moving party must show:

(1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the nonmoving party if relief were granted; (3) the likelihood of success on the merits; and (4) the public interest [in granting preliminary relief].

*Alessi v. Pennsylvania, Dept. of Pub. Welfare,* 893 F.2d 1444, 1447 (3d Cir.1990); *see Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989); *Fechter v. HMW Indus., Inc.,* 879 F.2d 1111, 1116 (3d Cir.1989); *CPC Int'l, Inc. v. Caribe Food Distrib.,* 731 F.Supp. 660, 664 (D.N.J.1990); *Bascom Food Prod. Corp. v. Reese Finer Foods, Inc.,* 715 F.Supp. 616, 624 (D.N.J.1989). Significantly, a "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988).

transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents....

(3) The unpaid supplier, seller, or agent shall lose the benefit of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary [of Agriculture] within thirty days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [of Agriculture], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored....

7 U.S.C. § 499e(c).

### B. Driscoll's Application

■ As Driscoll points out, other courts have granted preliminary injunctions directing compliance with the trust provisions of PACA.[3] Brief at 5–6. A salient factor in several of these cases was that the trust assets were being dissipated by the defendants. *See Korean Produce*, No. 87–6579; *Edward Boker*, No. 86–3903; *Chiquita Brands*, No. 89–1951.

Based upon the submissions, a preliminary injunction is not warranted in this case. The Third Circuit has repeatedly stated an injunction will not be granted when there is an adequate remedy at law. *Instant Air Freight*, 882 F.2d at 801; *Frank's GMC*, 847 F.2d at 102. In other words, there will be no irreparable injury if money damages will be sufficient to provide redress. *Instant Air Freight*, 882 F.2d at 801; *Frank's GMC*, 847 F.2d at 102.

There is an adequate remedy at law in this case. PACA explicitly provides a trust beneficiary can commence suit in federal court to enforce payment of amounts owing from a trust. 7 U.S.C. § 499e(c)(4). Therefore, Driscoll can commence, and indeed has commenced, a suit to recover the price of the potatoes supplied to N.A. Produce. The remedy at law is adequate because Driscoll may recover all amounts owed by Defendants in a suit for money damages.

### C. Dissipation and Segregation of PACA Trust Assets

■ Driscoll asserts that because Defendants are in the process of dissipating the assets of the trust, any remedy at law would be inadequate. Davis Affidavit at ¶¶ 8 & 10. Consequently, Driscoll seeks a preliminary injunction directing Defendants to segregate funds equivalent to the amount of its debt to Driscoll and place them in an interest bearing account at a particular depository institution. *See* Proposed Order. It does not appear, however, that dissipation justifies the sort of injunctive relief Driscoll seeks under PACA and section 499e.

Other courts have struggled with the issue of whether PACA permits a court to order the segregation of PACA trust assets and, if so, what circumstances justify segregation. Some courts have held PACA does not permit the segregation of trust assets. *See, e.g., JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 78 (2d Cir. 1990); *DeBruyn Produce Co. v. Victor Foods, Inc.*, 674 F.Supp. 1405, 1407–09 (E.D.Mo.1987); *C & E Enterprises, Inc. v. Milton Poulos, Inc.*, 107 B.R. 715, 718 (9th Cir.1989); *see also Fresh Western Marketing v. M & L Food Center, Inc.*, 707 F.Supp. 515, 516 (S.D.Fla.1989) (noting PACA does not appear to allow segregation and movant failed to show dissipation).[4] In contrast, other courts have permitted segregation upon a showing of dissipation of trust assets or the financial insta-

---

3. Driscoll relies upon several unreported cases which it attaches to its Brief. Brief at 5–6 (citing *Six L's Packing Co. v. Arter*, No. 88–1998 (E.D.Pa. 16 Jan.1991) (1991 WL 4400, 1991 Lexis 407); *Finest Fruits, Inc. v. Korean Produce Corp.*, No. 87–6579 (S.D.N.Y. 2 Oct. 1987) (1987 WL 18454, 1987 Lexis 8948); *Finest Fruits, Inc. v. Edward Boker, Inc.*, No. 86–3903 (S.D.N.Y. 30 May 1986); *Chiquita Brands, Inc. v. Blair Merriam Fresh Fruit and Produce Co.*, No. 89–B–1951 (D.Colo. 14 Nov.1989) (1989 WL 251474); *Raymond L. Park, Inc. v. Continental Farms & Produce Co.*, No. 89–1364, 1989 WL 159580 (C.D. Cal. 8 Mar.1989); *Lyle W. Currie Co. v. So Good Potato Chip Co.*, No. 88–2320–C–5 (E.D.Mo. 2 Dec.1988); *Golden Triangle Packing Co. v. American Banana & Produce Co.*, No. 87–1166 (W.D.Pa. 2 June 1987); *Finest Fruits, Inc. v. Freshville Produce Distrib., Inc.*, No. 86–7621 (S.D.N.Y. 23 Oct.1986); *Goodie Brand Packing Corp. v. B. Eisner Produce Corp.*, No. 86–8747 (S.D.N.Y. 1 Dec.1986)). Driscoll notes the preliminary injunction in *Six L's* was affirmed by the Third Circuit without opinion. Brief at 5.

4. In *Fresh Western*, the court, relying upon a Second Circuit case, noted a showing of dissipation *might* justify a preliminary injunction. 707 F.Supp. at 516 (citing *Dole Fresh Fruit Co. v. United Banana Co*, 821 F.2d 106 (2d Cir.1987)). The Second Circuit case, however, did not explicitly consider the issue; the Circuit merely addressed the propriety of contempt orders based upon a preliminary injunction which barred the dissipation of PACA trust assets. *Dole Fresh Fruit*, 821 F.2d at 108–11. In any event, the court in *Fresh Western* declined to grant an injunction because the plaintiff had merely alleged, but failed to show, dissipation. 707 F.Supp. at 516.

bility of the debtor. *See, e.g., Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir.1990) (dissipation shown); *De-Bruyn Produce Co. v. Olympia Produce Co.*, 734 F.Supp. 483, 486 (N.D.Ga.1989) (debtor financially troubled); *J.R. Brooks & Son, Inc. v. Norman's Country Market, Inc.*, 98 B.R. 47, 50 (N.D.Fla.1989) (dissipation shown); *see also Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 108 (2d Cir.1987) (noting district court ordered segregation to prevent dissipation). An examination of the relevant cases and legislative history indicates segregation is appropriate only when dissipation is shown and only when the Secretary of Agriculture seeks an injunction of the dissipation.

The legislative history of PACA indicates Congress did not contemplate the segregation of trust assets upon the motion of an unpaid supplier. PACA was originally enacted to "encourage fair trading practices in the marketing of perishable commodities by ... providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 98–543, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 406. Congress noted, however, that "[u]nder present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract." H.R.Rep. at 3; 1984 U.S.Code Cong. & Admin.News at 407. Consequently, Congress amended PACA. In amending PACA, Congress stated:

> This legislation would provide a remedy by impressing a trust in favor of the unpaid seller or supplier on the inventories of commodities and products derived from and on the proceeds of sale of such commodities and products in the hands of the commission merchant, dealer or broker....

H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407.

Significantly, Congress stated the PACA trust would be "a nonsegregated 'floating trust' made up of all of a firm's commodity related liquid assets, under which there may be a commingling of trust assets. H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407. Under PACA, there is "no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process." H.R. Rep. at 5; 1984 U.S.Code Cong. & Admin. News at 409. The Department of Agriculture, in recommending the adoption of the PACA amendments, noted that "in the event of business failures, trust funds would be applied to produce accounts and not distributed to other creditors."[5] H.R. Rep. at 14; 1984 U.S.Code Cong. & Admin. News at 417.

The legislative history of PACA suggests segregation is an inappropriate remedy. *C & E Enterprises*, 107 B.R. at 717–18. Under the statutory scheme described above, the trust is, in a sense, a legal fiction. Congress specifically provided the trust is nonsegregated and floating. H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407; *see JSG Trading*, 917 F.2d at 78. In addition, Congress allowed for the commingling of trust assets. In other words, the trust is nothing more than that portion of the debtor's assets which may be traced to the disposition of perishable agricultural commodities. Nothing in the legislative history indicates Congress intended unpaid suppliers to have the ability to compel debtors to segregate trust assets. *See Victor Foods*, 674 F.Supp. at 1407.

Nonetheless, in *Frio Ice*, the Eleventh Circuit held PACA permitted the segregation of trust assets. 918 F.2d at 159. The Circuit noted the legislative history indicated PACA was designed to protect unpaid suppliers of commodities from the dissipation of trust assets. *Id.* ("[P]reventing dissipation of the trust is a key purpose of PACA."). Consequently, the Circuit held injunctive relief in the form of segregation of trust assets was proper. *Id.*

The Eleventh Circuit, however, ignored the specific provision in PACA relating to dissipation of trust assets. When Con-

---

**5.** The Circuit in *C & E Enterprises* pointed out it is well-settled that PACA trust assets are not part of the bankruptcy estate of the debtor. 107 B.R. at 718.

gress specifically addressed the dissipation of trust assets, it did not provide that suppliers of commodities have a right to seek segregation of trust assets upon a showing of dissipation. Rather, Congress expressly vested the Secretary of Agriculture with the obligation to prevent dissipation of trust assets:

> If an investigation reveals the trust is being dissipated, each unpaid supplier-seller should be informed so that it will be able to protect it statutory trust rights. Except where violations are repeated or flagrant, the firm should be given a written warning and an opportunity to bring itself into compliance.... If a firm persists in trust dissipation, the Secretary [of Agriculture] can initiate an injunctive proceeding in the U.S. district court....

H.R.Rep. at 8; 1984 U.S.Code Cong. & Admin.News at 411; *see JSG Trading*, 917 F.2d at 78 (noting Secretary of Agriculture may seek to enjoin dissipation but not segregation); *Victor Foods*, 674 F.Supp. at 1409 (noting unpaid supplier may be entitled to injunction against dissipation, but injunction imposing segregation). In light of the legislative history, it appears the Eleventh Circuit misinterpreted the intent of Congress to vest the Secretary of Agriculture with power to prevent dissipation for the intent to vest unpaid suppliers with the right to seek segregation.[6]

Dissipation of trust assets is a legitimate concern under PACA. PACA, however, is accurately construed to restrict the unpaid supplier's ability to segregate trust assets. This construction is supported by both the legislative history and the language of section 499e, which provide the Secretary of Agriculture has the authority to seek an injunction of dissipation. 7 U.S.C. § 499e(c)(4)(ii); H.R.Rep. at 8; 1984 U.S. Code Cong. & Admin.News at 411. Moreover, PACA specifically provides unpaid sellers with their own remedy: they may bring an action to compel payment of trust

proceeds. 7 U.S.C. § 499e(c)(4)(i); *see Victor Foods*, 674 F.Supp. at 1409. Under these circumstances, it does not appear PACA allows for the relief Driscoll seeks in this motion.

### 1. *Proof Required for Segregation*

■ All of the cases allowing segregation upon the motion of the unpaid seller involved clear showings of either dissipation of trusts or general financial instability of the debtors. *Frio Ice*, 918 F.2d at 159 (dissipation); *Olympia Produce*, 734 F.Supp. at 486 (debtor financially troubled); *J.R. Brooks*, 98 B.R. at 50 (dissipation); *Dole Fresh Fruit*, 821 F.2d at 108 (dissipation). It may be argued, however, that mere dissipation is insufficient to justify injunctive relief in the form of segregation.

In *JSG Trading*, the Second Circuit held an injunction could not issue under section 499e when there was no showing that the debtor's use of trust assets would so deplete the trust that the unpaid supplier would have an inadequate remedy at law. *Id.* at 80. The Circuit therefore reversed the grant of a preliminary injunction directing the debtor to segregate a portion of its assets equal to its debt to the unpaid supplier from its other assets and place the segregated assets in a separate PACA trust account. *JSG Trading*, 917 F.2d at 79–80.

The unpaid supplier in *JSG Trading* had made an allegation similar to the one Driscoll makes: the debtor was dissipating trust assets by using them to pay other creditors. *Id.* at 78. The Circuit rejected the argument that dissipation would require segregation of trust assets from other assets of the debtor on the ground the legislative history of PACA indicated it was intended, in part, to protect the suppliers of perishable commodities from the bankruptcies of their buyers. *JSG Trading*, 917 F.2d at 77. *Accord Victor Foods*, 674 F.Supp. at 1409. Because the debtor

---

**6.** The Circuit in *JSG Trading* noted that if plaintiff feared dissipation, they could ask the Secretary of Agriculture to commence a proceeding pursuant to 7 U.S.C. § 499e(c)(4)(ii) to enjoin any dissipation. 917 F.2d at 78. Given that PACA specifically provided a mechanism to prevent dissipation, the Circuit declined to grant an injunction directing segregation of the defendant's assets. *Id.*

was financially healthy, the Circuit in *JSG Trading* declined to uphold the injunction. 917 F.2d at 80. The ruling in *JSG Trading* may be interpreted to mean PACA allows a debtor to dissipate trust assets or use them for purposes other than paying the unpaid supplier so long as the debtor retains sufficient other assets to satisfy its obligations to the creditor.[7] *See id.*

In any event, even if it is assumed segregation upon an unpaid supplier's motion is appropriate, Driscoll has not shown it is entitled to this relief. Driscoll has not substantiated its conclusory allegation that Defendants are dissipating trust assets. Moreover, there is no indication Defendants are either in bankruptcy or have insufficient assets to satisfy its obligation to Driscoll. Under these circumstances, Driscoll has not shown the irreparable injury required for an injunction to issue.

### D. Separate Bank Accounts Under PACA

■ There is an additional reason to deny Driscoll the relief sought. It has been held that PACA does not authorize a court to direct a debtor to deposit any amounts held in trust under section 499e into a separate bank account. *Victor Foods,* 674 F.Supp. at 1409. *But see Six L's,* No. 88–1998. In *DeBruyn,* the supplier of an agricultural commodity sought preliminary relief in the form of an order directing the debtor to establish a separate bank account representing the amounts held in trust. The court first noted there was no need for the court to order segregation of the trust assets from other assets of the debtor because the statutory scheme of PACA essentially contemplates a contin-uously existing trust. *Id.* at 1407. In other words, the court interpreted the trust requirement to be nothing more than a bookkeeping procedure. *Id.* With this in mind, the court then examined the legislative history of PACA to determine if Congress intended PACA to require the maintenance of separate bank accounts for trust assets.

The court held that nothing in PACA's legislative history created a requirement for separate accounts. *Id.* at 1408–09. Indeed, the court analogized section 499e to Article 9 of the Uniform Commercial Code, governing security interests. *Id.* In essence, the court reasoned, PACA did not require separate bank accounts because the trust provision did nothing more than create what is tantamount to a security interest in certain assets of the debtor. *Id.* at 1409.

Driscoll has moved for an order directing Defendants to establish a separate bank account for trust assets. Under the reasoning in *DeBruyn,* however, PACA neither authorizes nor requires the creation of such an account. Consequently, it is questionable whether Driscoll would be entitled to this relief even if irreparable harm were shown. Accordingly, Driscoll's application is denied.

### *Conclusion*

For the reasons set forth above, Driscoll's application for a preliminary injunction is denied.

---

**7.** This conclusion is consistent with *Six L's,* the only case Driscoll cites which contains any discussion of the facts. *See* Brief, Exhibit A. Although *Six L's* value here is limited because the court did not articulate its reasoning in granting injunctive relief, the facts indicate injunctive relief would be appropriate under *JSG Trading.* In *Six L's,* the court indicated the defendant was in bankruptcy. Although the court was not aware of the pending bankruptcy when it first entered the order granting injunctive relief, it subsequently became aware of the bankruptcy proceeding and reinstated the order with that awareness. In any event, the pending bankruptcy suggests the defendant in *Six L's* might not have sufficient assets to satisfy its obligations to the unpaid supplier. Therefore, the grant of injunctive relief in *Six L's* would appear to comport with the proposition that injunctive relief under section 499e requires more than mere dissipation of assets.

Driscoll points out the Third Circuit affirmed the injunction in *Six L's.* Brief at 5 (citing *Six L's* ). Although there is no reported opinion from the Circuit, it appears the issue faced by the Circuit in *Six L's* was whether trust assets were part of the bankruptcy estate. This suggests segregation is an appropriate way to remove trust assets from a bankruptcy estate. Therefore, the mere affirmance of the injunction in *Six L's* does not compel a finding that the injunctive relief Driscoll seeks is proper.